# TALLADEGA INSURANCE CO. *vs.* LANDERS.

[*ACTION FOUNDED ON CERTIFICATE OF DEPOSIT.*]

1. *When an appearance, irregularly entered, will not be permitted to be withdrawn.*—An appearance irregularly entered by defendant's attorney will not be allowed to be withdrawn when the cause is called for trial if objected to, if such withdrawal will have the effect to prejudice the plaintiff; the irregularity will be held to be the fault of the party's attorneys, who made the irregular appearance, and they will not, at that stage of the case, be permitted to withdraw it, and thus take advantage of their own fault, to the injury of the plaintiff.

2. *Lost complaint, &c.; when substituted; on what evidence.*—If when a cause is called for trial, the summons and complaint are lost, the plaintiff will be permitted to substitute them upon the best evidence that can be adduced, if such evidence is satisfactory to the court, of the former existence and contents of the originals.

3. *Witnesses in his own behalf; when competent.*—It is not necessary that a plaintiff, when offered as a witness in his own behalf, should have been a competent witness when the suit was commenced; it is sufficient if he is competent when offered; the old law, not permitting him to be a witness in a case against a corporation, is changed by the act of the 14th February, 1867.—Revised Code, § 2704.

4. *Charter of Talladega Insurance Company; what it authorizes.*—The charter of the Talladega Insurance Company authorizes the company to receive money on deposit, and give a certificate of deposit for the same. To receive money on deposit, &c., is not such an act of banking, by this company, as is prohibited by the proviso of the 5th section of the act incorporating the Tuskegee Insurance Company, as the act declaring the powers conferred on said company.

5. *Tuskegee Insurance Company; its organization under its charter, not necessary to give force to the charter of Talladega Insurance Company.* The acceptance of the charter of the Tuskegee Insurance Company, by said company, and organizing under it, &c., was not necessary to give life and vigor to the act chartering the Talladega Insurance Company. What the Tuskegee Company did, or did not do, cannot affect the charter of the Talladega Insurance Company, one way or the other.

6. *Count for money had and received; when certificate of deposit is competent evidence under.*—In an action founded on a certificate of deposit given by the Talladega Company, such certificate is competent evidence under a count for money had and received, and under such count may entitle the plaintiff to recover, if the certificate should be excluded as evidence, because of a variance between it and the description of it, in a count framed on the certificate itself.

APPEAL from Circuit Court of Talladega.
Tried before the Hon. JOHN HENDERSON.

THE facts of the case appear sufficiently in the opinion.

JOHN T. HEFLIN, for appellant.—The court erred in refusing to allow the supposed appearance of Walden & Bowie to be withdrawn; the evidence shows that it was not made by either of the firm, but by the presiding judge at the fall term of 1867. It is not the business of the judge to enter appearances, and the appearance, so called, in this case, seems, from the evidence, to have ' been made by mistake, as the counsel did not authorize it. And it is not such appearance as dispenses with service under the rule.—General Rule No. 1, Rev. Code, p. 814; *Nabors v. Nabors*, 2 Porter, 162. The court erred in substituting the complaint; the evidence was not sufficient of the loss of the original, or that the complaint substituted was a precise copy, or a copy in substance, of the original. The only evidence of the loss of the original is, that the clerk carefully examined his office and did not find the summons and complaint, and Taul Bradford, counsel of plaintiff, had searched his office and could not find the same. The time or diligence devoted to these searches are not given; they may have been long or short, diligent or otherwise. It is insisted that the evidence was totally insufficient of the loss.

The evidence does not show that the complaint, as substituted, is an exact copy, or a copy in substance. The attention of the court is called specially to the evidence on this point, which is that the complaint, as substituted, "is as exact a copy as he is able to make ;" this does not prove that it is a copy in substance of the lost pleading.

The court should not have allowed the substitution of a complaint without a summons, as the pleading, when substituted, takes the place of the original papers ; the record should show every thing that is necessary to give the court jurisdiction, and support its judgment when rendered.

The court mistook the law in permitting F. M. Thomasson to testify that he was acquainted with the Talladega

Insurance Company, and that Huey was its secretary. The effect of this evidence was to prove the existence of a corporation by parol, which cannot exist by parol, and as a corporation can exist only in virtue of statutes and records, this grade of evidence is alone competent to prove such existence.    There is no averment in the complaint of the authority of Huey to make the certificate, or what relation he sustained to the defendant; hence, this evidence was not in the issue.— *Welland Canal Company v. Hathaway*, 8 Wendell, 480 ; *Morgan v. Patrick & Smith*, 7 Ala. 185, and authorities cited ; *Hurst v. Montgomery & W. P. R. R. Co.*, 9 Ala. 513, first paragraph of opinion.    The certificate of deposit should not have been read to the jury as evidence ; it was not signed by the defendant, and did not purport on its face to be signed by another, for or by the authority of the defendant.    The complaint does not aver by whom the certificate was made, and the certificate read in evidence varies from the certificate described in the complaint, in this—the complaint does not state when the certificate therein specified is payable.    The certificate read under the complaint is payable on the return of the certificate properly endorsed.    The certificate declared on might be evidence of a general or special deposit, in which there is an essential difference.    The plaintiff should not have testified as a witness ; he was not competent at the commencement of the suit.    The act of February 14th, 1867, Revised Code, § 2704, does not operate on suits then pending, and such a construction as is given in this case, makes said act retroactive ; said act should not be construed to extend to suits to which a corporation is a party, but to suits to which natural persons are parties, who can appear in court and take a corporal oath.— *Young v. Mobile & Ohio Railroad*, 31 Ala. 422 ; *Oaks & Mills v. Alabama & Tenn. Rivers Railroad*, 37 A. R. 694.

The evidence of J. B. M. Landers, of the demand of payment of Huey in December, 1862, should not have been permitted to go the jury, as it does not appear that Huey was then the secretary of the corporation ; the witness said the demand was made in the office of the company,

but it does not appear that Huey was acting as secretary at that time.—*Johnson v. Hawes, Adm'r*, 2 Stewart, 27.

The first charge should have been given; there could not be a recovery on the certificate of deposit without proof of a demand and default. Such demand was not made, as the evidence does not show that James G. L. Huey was an agent of, or had anything to do with defendant's business at the time of the demand, and the bill of exceptions contains all the evidence.

The second, third and fourth charges should have been given, for the reason that the defendant never had an existence as a corporation under said acts of the legislature of February 13th, 1856, (Acts 1865–6, p. 261,) and the act of January 14th, 1856, p. 257. The act of February 13th is not passed so as to make the act of January 19th part of the same act, or to constitute but one act. The constitution requires all bills read in each house on three separate days. In *Dew v. Cunningham*, 28 Ala. 466, it is said, this provision of the constitution does not require that every thing that is to become a law by the adoption of the bill to be thus read. This may be true as to public or general laws, of which the court will take judicial notice, but not as to private laws that must be proved, each of which must be perfect in itself, and cannot derive aid by reference to a mere private law.

Said acts do not constitute a corporation without the assent of a majority of the persons named as corporators. To create the corporation, such assent, and an organization as prescribed, are indispensable. The bare assent is not sufficient, as there would be no officers to manage the corporation, and there can not be an election of officers until the stock is subscribed and an organization of the corporation. This organization is indispensable to the existence of the corporation.—Angell & Ames on Corporations, § 81, page 75.

The charter must be accepted as offered, and if the charter requires an organization by the election of officers, the conditions imposed must be complied with.—Angell & Ames on Corporations, § 85.

There is no evidence in the record of the acceptance of

the charter by any person except James G. L. Huey, and
his acceptance is only inferred from his acts, as shown by
the evidence of F. M. Thomasson and J. B. M. Landers.
The evidence does not show that the others, named in the
act of incorporation, have ever had notice of the passage
of the act. The acts of Huey cannot effect the others,
hence, the charges asked should have been given. The
record contains all the evidence.

Conceding the existence of the corporation, the inquiry
arises as to the extent of its powers ; this is determined by
its charter. The corporation cannot exercise any power
that is not specifically delegated, or that is not incidental
to the delegated powers, and indispensable to the execu-
tion of the delegated powers.—*Ex parte Burnett*, 30 Ala.
461 ; *Montgomery & W. P. R. R. v. City of Montgomery*,
3 Ala. 31 ; *Grand Lodge v. Waddell*, 36 Ala. 313, and au-
thorities cited in 2d paragraph of opinion.

The charter so called is for an "insurance company ;"
its powers are defined by the first and fifth sections of the
act of January 19th, 1863.—Session Acts, 1855-6, p. 257.
The grant of power by the first section is, "to purchase
and hold real estate of any description whatever, and may
dispose of the same at pleasure. And shall have power,
generally, to do and perform any and every act necessary
to be done, to carry into effect the objects of this charter,
not inconsistent with the constitution and laws of this
State and of the United States." This is a general grant
of power to carry out "the objects of the charter."

The fifth section defines the objects of the charter and
business of the company, and specifies in detail, the gene-
ral powers. The powers defined are "to make insurance
on ships and on all other sea vessels, upon steamboats and
all other river boats, on all goods, wares, and merchandise,
slaves, bullion, money and other property; against all
marine and river risks, and upon houses, stores, and other
buildings, goods, wares and merchandise of every descrip-
tion against fire, and to fix a premium thereon ; and may
make insurance upon the lives of persons, fixing a rate of
insurance thereon ; to receive from any free person or
persons, or from any corporation, deposits on trust, and to

accept all such trusts or agencies within the scope of its
business as may be confided to it.    It shall have power to
borrow money and issue its bonds therefor; to invest its
money and property in any thing and in any manner,
which would be lawful for a citizen to invest money or
property in, and the said property and securities to sell
and transfer at pleasure; it may loan its money or prop-
erty to any person or persons, or corporation, on any
security which it may think proper.   The said corporation
shall have power to purchase, discount, and sell, bills of
exchange and promissory notes; to receive and deposit
for collection, promissory notes and bills of exchange, and
may charge for such collections such per cent as is usual
in similar chartered insurance offices, or private banking
houses.

" Provided, that said corporation shall not make or issue
any bills, bonds, notes, or ' other securities' to circulate in
the community as money."

The only power contained in the charter that would, by
the most strained or latitudinous construction, authorize
the defendant to receive deposits, is found in the last
phrase of the first sentence of the fifth section, which is
as follows :   " To receive from any free person or persons,
or from any corporation ' deposits on trust,' and to accept
all such agencies, within the scope of its business, as may
be confided to it.   This grant of power does not authorize
the issue of the certificate of deposit sued on in this case.
The general object of the company, as defined by the
charter, is insurance.   The certificate of deposit sued on
is not connected with insurance, but with banking, which
is foreign to the business of the company under the char-
ter, and the certificate is void.—*Angell and Ames on Cor-
porations,* § III, p. 101, and authorities cited; *Waddell v.
Grand Lodge, supra ; The People v. River Raisin and Lake
Erie R. R. Co.,* 12 Mich. 390.

The evidence fails to show any act of insurance by the
defendant, but shows many acts of banking.   Receiving
money on deposit, and giving the usual certificate of
deposit, is not insurance, but banking.   The business of
banking has been judicially ascertained to consist of issu-

ing negotiable notes, discounting notes, and *receiving deposits.*—*People v. Utica Insurance Co.,* 15 Johnson, 390; *People v. Manhattan Co.,* 9 Wendell, 383; *N. Y. Firemen Insurance Co. v. Ely,* 2 Cowen, 710; Bouvier's Law Dictionary, Title, Banks and Banking; *People v. River Raisin R. R. Co.,* 12 Mich. 389.

The power to receive "deposits on trust" does not authorize the receiving of money on deposit, as a general deposit, in contra-distinction to a special deposit. There is an essential difference between a general and a special deposit; when a general deposit is made, the money deposited becomes the property of the bank, and the relation of debtor and creditor is created between the depositor and the bank; when a special deposit is made, the money does not become the property of the bank; the relation of debtor and creditor is not created; such special deposit is a bailment, and the relation of bailor and bailee is created between the depositor and depositary.—*Franklin Bank,* 1 Paige, 249; *Commeraciál Bank of Albany v. Hughes,* 17 Wendell, 94; *Graves v. Dudluy,* 20 N. Y. 76, E. P. Smith; Edwards on Bailment, 66; *Keene v. Collin,* 1 Met. (Ky.) 417; *Bellows Falls Bank v. Rutland County Bank,* 40 Vermont, 377.

The certificate of deposit declared on in this case, which is set out in the bill of exceptions, shows that the deposit was general; the evidence of J. B. M. Landers proves the same thing, consequently, the transaction out of which the suit arises was not the receiving of "deposits on trust," as is provided by the charter—first sentence, fifth section, *supra*—but is a general deposit in the regular course of the business of banking, which is not given by the charter, but is prohibited by the general law, and the proviso to the 5th section of the charter so called.—*Vide* Code of 1852, §§ 1481--2--3--4, which were in force February 22d, 1861, that being the date of the certificate of deposit.

Section 1484, of the Code of 1852, section 1770, Revised Code, prohibits all private corporations from "receiving deposits," unless the power is expressly given, and such power, by implication or construction, is expressly prohibited.—Revised Code, § 1770, *supra.*

The power to engage in banking is not only prohibited to private corporations by the general law, (Code of 1852, § 1484, *supra*,) but such power as was assumed in the issue of the certificate sued on, is prohibited to the Talladega Insurance Company, by the proviso to the 5th section of the charter, which says that said corporation shall not make or issue any bills, bonds, notes, "or other securities," to circulate in the community as money. By the custom of merchants, "certificate of deposits" are well known as a security for money, and are equivalent in value to money on deposit in bank. The issue of such securities is expressly prohibited by the first proviso to the 5th section of said charter, *supra*.

Where a bank receives money on deposit in the ordinary way from a customer, it is usual to enter the amount to his credit on the books of the bank, and on the bank book of the customer; the entry in the bank book of the customer is the only evidence of the deposit, which is paid out as drawn for by the depositor. But when such entry is not made in a book, and a certificate of deposit is given payable "on the return of the certificate properly indorsed," any holder for value is the owner of the certificate, and such certificate circulates as money. The power to receive deposits and issue certificates is prohibited to private corporations by the general law, and to the defendant in this suit, by the proviso to its charter.—*Downs v. The Phœnix Bank of Charleston*, 6 Hill, N. Y. 297, and authorities cited in first paragraph of opinion; *Bank of New Orleans v. Merrill*, 2 Hill, N. Y. 295; Edwards on Bills and Promissory Notes, 348; *Bellows Falls Bank v. Rutland County Bank*, 40 Vermont, 377.

The certificate sued on, dated at the office of the defendant, is not in effect, and was not intended as a promissory note, which is cumulative evidence that it was intended to circulate as money, in violation of the general law and the proviso of the charter.—*Sibree v. Trippe*, 15 Meeson & Welsby, first paragraph of opinion, p. 28.

Corporate powers cannot be created by implication or extended by construction; in the construction of charters, every doubt as to the delegation of power is to be resolved

against the exercise of the power, otherwise all charters for insurance companies, railroad and navigation companies, as well as mining and manufacturing companies, would be banks in disguise.—*Pennsylvonia R. R. Co. v. Canal Commissioners*, opinion of Black, C. J., p. 22, Penn. State Rep., vol. 21.

The facts of this case are very unlike the facts in the case of *Ala. and Miss. Rivers R. R. Co. v. Sandford & Reid*, 36 Ala. 703. In that case the capacity of the corporation to make, and the authority of its officers to execute the certificates of indebtedness for work, are averred in the complaint, and the pleading does not put those facts in issue ; here the averments in the complaint and the pleas are different.

The transaction out of which the certificate arose, being forbidden by law, the certificate is void, and a recovery cannot be had under the count on the certificate, or the common count ; hence, the fourth charge should have been given.—*Waddell v. Grand Lodge, supra.*

It is insisted that the court erred in refusing each charge, and all the assignments of error are insisted on.—*Waddell v. Grand Lodge, supra.*

BRADFORD, MARTIN & ISBELL, for appellee.—1. In the court below, there was an appearance entered for the defendant.—*Gilbert et al. v. Lane*, 3 Por. 267. The application to withdraw the appearance came after it was ascertained that the summons and complaint had been lost ; and the refusal of the court to grant it, is fully sustained by the evidence.

2. There was no error in allowing the substitution of papers.—Rev. Code, § 2672.

3. The testimony of the witness, Thomasson, was competent.—*Bank of the United States v. Drandridge*, 12th Wheat.; Angell & Ames on Cor. (2d edition,) p. 55. The objection to it came too late, and was too general.—*Price v. Branch Bank of Decatur*, 17 Ala. 374. The objection, as made, amounted to a motion to exclude, and was properly overruled.—*Newton v. Jackson*, 23 Ala. 335.

4. The certificate of deposit was admissible.—Act in-

corporating Tuskegee Insurance Company, section 5; Angell & Ames on Cor. (2d edition,) p. 181.

5. Sanders, the plaintiff below, was a competent witness.—Rev. Code, § 2704. The fact that he was not competent at the commencement of the suit, did not alter the case.—*Loftin v. Lyon & Baker*, 22 Ala. 540. The defendant was not deprived, by the section of the Code referred to, of any of its corporate rights, and the acceptance of its charter by the defendant, did not raise an implied contract, binding the State never to alter its judicial proceedings in a case in which the defendant might be interested.

6. The objections to the testimony of Sanders are the objections to Thomasson's.

7. To sustain the several refusals of the court below to charge as requested, we insist that, under the plea of "*nul tiel* corporation," it was incumbent on the plaintiff below to establish but two facts : 1st. The act of incorporation ; 2d. The acceptance of that act, or charter, by the corporators, or by a majority of them. The first of these facts was indisputably proved, and the second was established in the only mode presumably within the reach of the plaintiff—an always legal, and sometimes . the only possible, mode of establishing such a fact—that is, by showing " such usage as could not have prevailed, unless it ('the charter') had been received, and from which the court may necessarily infer an acceptance." It did not behoove the plaintiff to show, either the separate admissions of acceptance of the several corporators, or a formal or joint resolution of acceptance by them, or by a majority of them ; but simply to establish the acceptance, as any other fact is established in court.—Angell & Ames on Cor. (2d edition,) pp. 52, 55; *Bank of the United States v. Dandridge*, 12th Wheat; *Russell v. McClellan*, 14th Pick. (Mass.) 53 ; *Riddle v. Pro. of Locks, &c.*, 7 Mass. 187.

The act of incorporation and its acceptance, create a corporation *in concreto*, capable of suing and of being sued.

The prescribed duties of a corporation, and the restrictions upon its powers, are not conditions precedent to its existence ; and even if this were so, whenever it is sued for

a breach of contract, they should be taken as having been performed, and that, notwithstanding it could not invoke a like rule against the State proceeding to vacate its charter.—Angell & Ames on Cor. (2d edition,) p. 45 ; *Tar River Navigation Co. v. Heal*, 3d Hawks' (N. C.) R. 520 ; *Minor et al. v. Mechanics Bank of Alexandria*, 1st Peters, 46 ; *Walker v. Devereaux*, 4th Paige, Chan. R. 229.

8. As to the general issue, see authorities before cited. *Foster et al., Ex'rs, v. Essex Bank*, 17 Mass. 497.

PECK, C. J.—The appellee commenced his suit, in the circuit court of Talladega county, in the nature of an action of assumpsit, founded upon a certificate of deposit, in the words and figures following :

" 313 00.   Talladega Insurance Company, Talladega, Alabama, February 22d, 1861.   Mr. J. B. M. Landers has deposited in this office, in gold coin, three hundred and thrteen dollars, to the credit of himself, payable on the return of this certificate, properly indorsed.   James G. L. Huey, Secretary.   No. 1417."

The complaint contains two counts on this certificate, and a common count, for money had and received.   The appellants are sued as a body corporate and politic, created by law.   The minute entry of the judgment shows, that at the spring term of said court, in the year 1868, a trial was had before a jury, and there was a verdict and judgment for the appellee, for the sum of four hundred and seventy-one dollars and fifty-nine cents, and costs of suit.

On the trial, a bill of exceptions was signed and sealed, at the instance of the appellants, which sets out the proceedings at length, and shows the several objections made by them.   The errors assigned in this court, are founded upon this bill of exceptions.

The first question made in the bill of exceptions, grows out of a motion made by Geo. S. Walden, an attorney of the court, to withdraw the appearance of the defendants. The bill of exceptions states, that the case was called for trial in its order on the docket, and the plaintiff's counsel announced himself ready for the trial, when the said Geo. S. Walden, one of the law firm of Walden & Bowie, called

on the plaintiff's counsel for the papers; then plaintiff's counsel called on the clerk for the summons and complaint; the clerk, after diligent search, could not find them in his office; said Walden then inquired of the court whether Walden & Bowie appeared for the defendant, and was informed by the court that they did; said Walden then examined the appearance entered on the docket, and said that it was neither in his handwriting, or of A. W. Bowie, his co-partner, and that he supposed there was some mistake about it; that he had no recollection of having entered the appearance, or of having authorized it to be done, but that he would not state positively that he had not done so; and asked leave to withdraw the appearance, but the counsel for plaintiff objected. By reference to the trial docket of the last fall term of the court, opposite the name of the defendant, where the case stood on the trial docket, on the left hand side, where appearances are entered by counsel, it appears that the letters W. & B., in the handwriting of the presiding judge, and on the right hand page of the trial docket, and opposite said case, was an entry, in the handwriting of the presiding judge, "continued by the plaintiff," and the case appeared, from the minutes of the last court, to have been continued by the plaintiff; that there was no other law firm in the town of Talladega to which the letters W. and B. would apply, except Walden and Bowie; that the entry of the appearance of the defendant on the trial docket, at this term of the court, is in the handwriting of the clerk of the court, and is entered thus, "Walden and B." The clerk, supposing that the letters W. & B. were intended for Walden & Bowie, carried forward the entry of the judge, " W. & B.," Walden & B.

Said Walden, on cross-examination, stated that he and Bowie were attorneys for the Talladega Insurance Company, and were retained by said company to prosecute and defend all litigated cases for the company.

R. H. Isbell, one of the attorneys for plaintiff, was examined and stated, that according to his recollection, when this case was called for trial at last term of the court, that counsel appeared and represented the defendant, and that not being prepared to prove a demand and refusal of pay-

Talladega Insurance Company v. Landers.

ment on the cause of action, he asked and obtained a continuance.

A. W. Bowie, the law partner of Geo. S. Walden, stated, that if he had ever entered an appearance, or authorized it to be done for the defendant, he had no recollection of it; this was all the evidence with regard to the appearance. The court refused to allow the appearance to be withdrawn, and the defendant excepted.

The appearance for the defendant, sought to be withdrawn, is certainly not entered in conformity to the rule on this subject, and if the plaintiff had made a timely motion to strike it out, it would probably have been granted; but it is altogether a different thing, when the motion comes from the defendant to withdraw his appearance. We think it very clear, that the appearance entered in this case, was entered by the counsel of the defendant, or one of them, or by the presiding judge, at their request; most probably, by the judge. It is a common thing, when a case is first called, for attorneys, especially attorneys for defendants, to ask the court to enter their names on his docket as attorneys for the defendant, and it is done, as a matter of course; every one who has practiced long in the circuit courts, knows this to be so. Where an attorney for a defendant enters his name as such, without complying strictly with the rule, or has it so entered by the clerk or judge, the irregularity, whatever it may be, is the fault of the attorney, and not of the plaintiff, and neither the defendant nor the attorney should be permitted to take advantage of it, to the prejudice of the plaintiff. The time when the motion was made in this case, and the circumstances attending it, show very clearly to our minds, that the motion would not have been made, but for the fact, that the papers, when called for, happened to be missing, or rather, could not be found. The plaintiff's attorney, when the cause is regularly called, announces himself ready for trial; one of the defendant's attorneys is present, and calls on the plaintiff's attorney for the papers, makes no objection as to his appearance, but, as soon as it is discovered that the papers can not be found, he, then, for the first time, thinks there must be some mistake about his appearance, and moves the

court for leave to withdraw it.  He, manifestly, believed, that in the situation of the case, when the motion was made, if granted, it would have the effect to benefit his client and prejudice the plaintiff, and this he should not be permitted to accomplish, by taking advantage of his own neglect or fault.  By the loss of the papers, if the appearance was withdrawn, there would be nothing to show that the defendant was in court, and the plaintiff, for that reason, might fail in his case altogether, or, at least, have to submit to a continuance.  We, therefore, hold, that the court was right, under the peculiar circumstances, in refusing the motion to withdraw the appearance of the defendant, by his attorneys, although it was irregularly made.  The case in 2 Porter, referred to by appellant's counsel, is not at all like this case ; there, the question about the appearance, grew out of a motion by plaintiff to reject a plea in abatement, because it was not filed in time.

After the motion to withdraw the appearance of the defendant's attorneys was overruled, the plaintiff moved the court for an order to substitute papers—that is, to substitute a summons and complaint, alleging that the papers in the case were lost.  To sustain his motion, he proved by the clerk of the court, that he had carefully examined his office for the summons and complaint, and could not find them.  He also proved by Taul Bradford, one of the attorneys of the plaintiff, that he had searched for the summons and complaint, in the office of the plaintiff's attorneys, and that he could not find them among their papers, or in their office.  He also stated, that in the fall of 1865, he made out a summons and complaint on the certificate of deposit sued on, and gave it to the clerk of the court for issuance by him ; that he recollected seeing the said summons and complaint, after the return term of the writ, and examining the case with reference to a trial of it, at the fall term of the court, 1867, and deciding, from an inspection of the summons and complaint, that the case stood for trial at that term of the court ; though he could not state then, as matter of recollection, that there was any return of, executed by the sheriff on it ; that the summons and complaint, which plaintiff proposed to substitute for the origi-

nal, was as exact copy as he was able to make.   This was all
the evidence with regard to the loss and contents of said
summons and complaint.

The defendant objected to the substitution of said sum-
mons and complaint ; the court overruled the objection,
and ordered that said copy of said summons and complaint
be substituted for the originals, and the defendant excepted.
The amended summons and complaint is set out, and con-
sists as above stated, of two counts on the certificate of
deposit, and a count for money had and received.   The
objection to the substitution, is a general objection.   It
does not state whether it was because the proof of the loss
and search for the original summons and complaint was
insufficient, or whether the copy offered to be substituted,
was not a substantial copy of the originals.   There was no
error in overruling the objection, because of its generality ;
it should have been stated, at least with some particularity ;
the grounds of the objection, whether it was because the
evidence of the loss and search was insufficient, or, that
the proposed copy to be substituted, was not a substantial
copy of the originals.   The mind of the court should have
been drawn to the reason or reasons for the objection ; but
we hold the objection was properly overruled, whether it
was based upon the insufficiency of the evidence of the
loss and search, or because it was not shown to be a substan-
tial copy of the original summons and complaint.

The clerk proved the originals were lost, and that he
could not find them after a diligent search in his office, nor
could they be found by the plaintiff's attorneys among their
papers, or in their office.   The complaint in this case was
founded upon the certificate of deposit, with a count for
money had and received.   There could be little, if any
more difficulty in making out a substituted complaint on
a plain promissory note, and it would have been hard to
make a mistake as the money count.   For these reasons,
we hold that less evidence was required to prove the con-
tents of the original complaint, than if it had been a com-
plaint complicated in its character, and requiring greater
skill in framing it.   Section 648 of the Revised Code, says :
" If the record of any judicial proceeding, suit, judgment

9

or decree of any justices, circuit or chancery court in this State, or any part thereof, has been, or may be lost, burned or otherwise destroyed, the same shall be substituted, by order of such court, upon the best evidence that can be adduced, and which shall be satisfactory to the court, of the former existence and contents of such judgment or decree; and when so substituted, shall have the same force and effect, with the original judgment or decree."

We hold that this section, if not the letter of it, at least the spirit of it, authorized the substitution in this case. The rule adopted at the last July term of this court, although made after the substitution in this case, and not properly applicable for that reason, nevertheless, shows the mind of the court on this subject. It says, " whenever a party shall make, or desire to make, a motion to substitute a paper, in a pending suit, or motion, which has been lost or destroyed, or to substitute a record, or any part thereof, which has been lost or destroyed;" * * * * * * * * * " the court before which the motion is made, may make such order or decree, or render such judgment on the motion, *as in its discretion* may seem just and proper." Besides, courts of general jurisdiction have an inherent power to substitute records and papers of their respective courts, that are lost or destroyed.—*McLendon v. Jones*, 8 Ala. 298 ; *Adkinson et al. v. Keel, use, &c.*, 25 Ala. 551, and *Pruit v. Pruit, Adm'r*, at this term. The court below, therefore, committed no error in permitting the summons and complaint to be substituted.

After the summons and complaint were substituted, the defendant appeared and pleaded : 1. The general issue, and *nul tiel* corporation, on which pleas the plaintiff took issue ; these pleas appear to have been made in short, by consent. Before issue was taken upon these pleas, the plaintiff demurred to the plea of *nul tiel* corporation, which was overruled. The trial then proceeded on the issues joined on the two pleas. On the trial, the plaintiff read in evidence two private acts of the legislature, one of the 13th of February, 1856, entitled an act to incorporate the Talladega Insurance Company, (Acts of 1855–6, p. 261 ;) the other approved the 19th January, 1856, entitled an act to incorporate the Tus-

kegee Insurance Company, (Acts of 1655-6, p. 257.)   The last named act is drawn out at length, incorporating certain persons, and such other persons as might thereafter become associated with them, and setting out in full the powers of the corporation, among which are the powers to purchase, hold and enjoy real and personal estate of any description whatever, and to dispose of the same at pleasure ; to receive from any free person or persons, or from any corporation, deposits *on trust ;* to borrow money and issue their bonds therefor ; to invest its money and property in anything, and in any manner, which would be lawful for a citizen to invest money or property in ; to loan its money or property to any person or persons, or corporation, on any security which it may think proper ; to purchase, *discount,* and sell bills of exchange and promissory notes ; to receive and deposit for collection promissory notes and bills of exchange, and may charge for such collections such per cent. as is usual in similar chartered insurance offices, or private banking houses ; provided, that the said corporation shall not make or issue any bills, bonds, notes, or other securities, to circulate in the community as money ; and provided further, that said corporation shall be subject to the laws of this State against usury.   The first named act is a short one, consisting of but one section, and after declaring certain persons, and such others as may thereafter become associated with them, a body politic and corporate, by the name of the Talladega Insurance Company, says, " and by that name, shall be entitled to all the privileges 'invested with all the powers, and subject to all the restrictions as are conferred and imposed upon the Tuskegee Insurance Company."

The plaintiff then introduced one F. M. Thomasson as witness, who stated, in substance, that he was acquainted with the Talladega Insurance Company ; that it had a place of business, in the town of Talladega, and had such place of business there for several years ; first in the counting-room of James G. L. Huey's store-house, and afterwards in a newly erected brick building, known as the Talladega Insurance Company buliding ; that it continued to transact business there for several years, doing a bank-

ing and exchange business, buying and selling bills of exchange, receiving money on deposit, and giving certificates of deposit therefor; that James G. L. Huey acted as the secretary of the company, and transacted most, or all of the business he knew anything about. The defendant declined to cross examine the witness, but objected to the evidence, and to each *divisable part thereof;* the objection was overruled, and defendant excepted.

The plaintiff then proved the handwriting of said James G. L. Huey to the certificate of deposit declared upon, and offered to read it to the jury ; the defendant objected, the objection was overruled, and the certificate was read to the jury, and defendant excepted.

The plaintiff then offered himself as a witness ; the defendant objected to his examination, on the grounds: 1. That plaintiff was not competent as a witness for himself, at the commencement of the suit ; 2. "The plaintiff is not a competent witness in this case, against the defendant, in the capacity in which the defendant is sued." The objections were overruled, and defendant excepted. The plaintiff, in substance, stated that on the 22d of February, 1861, he deposited with the Talladega Insurance Company, the sum of three hundred and thirteen dollars in gold coin ; that said James G. L. Huey, as secretary of said company, gave him the certificate of deposit sued on ; this was done at the office and place of business of said company, in the town of Talladega ; and that about December, 1862, in the office of said company, he demanded of said Huey, as secretary of said company, payment of the amount due on said certificate, which he refused to pay. The defendant objected to this evidence, his objection was overruled, and he excepted. No evidence seems to have been offered by the defendant.

The defendant asked the court to charge the jury : 1. That "the certificate of deposit read in evidence does not entitle the plaintiff to a recovery under the issues."

2. "That if the jury believed from the evidence, that the defendant had a legal existence under said acts of the legislature, then the defendant is not bound by the certificate introduced as evidence by the plaintiff."

3. "That the defendant, as a corporation, has no power, under said acts of the legislature, to receive money on deposit, and the defendant is not bound by said certificate, although the money may have been deposited in the office of the defendant." .

4. "That the plaintiff can not recover on the common counts in the plaintiff's complaint."

5. "To constitute a corporation under said acts of the legislature, the jury must be satisfied by the evidence, that the identical persons named in the act of the 19th of January, 1860, or a majority of them, accepted the provisions of said act, and opened books of subscription to the capital stock of the company in Tuskegee, and obtained the subscription of stock required by said act, and organized by electing directors and a president, as required by said acts."

6. That "to constitute a corporation under said acts of the legislature, the jury must be satisfied by the evidence, that the identical persons named in said act of the 13th February, 1856, or a majority of them, accepted the provisions of said act, and opened books for subscription to the capital stock of said company, and obtained the subscription of stock required by said act, and organized by electing directors and a president as required by said act."

These charges were severally denied, and the defendant excepted. The several exceptions taken on the trial, and the refusal of the court to give the charges asked by the defendant, are assigned as errors, &c.

The two first objections made in the bill of exceptions, are already disposed of—that is, the objection growing out of the motion to withdraw the appearance of defendant's attorneys, and the objection as to the substitution of the summons and complaint. The next objection is, as to the evidence of the witness, Thomasson, examined by the plaintiff. After the examination of this witness by the plaintiff, the defendant declined to cross-examine him, but objected to his evidence, " and *each divisable part thereof*." This is neither more or less than a mere general objection. From the language of the objection, the judge could not know why, or for what reason it was objected to ; the ground or

grounds of the objection should have been disclosed. For this reason, if for no other, the objection was rightly overruled. It was certainly proper for the plaintiff, if the defendant had exercised the privileges conferred by the act of the legislature, had a regular place of business, and a secretary who transacted the business of the company, to prove these facts. This was not only proper evidence, but it was competent to prove it by parol. The court was, therefore, right in overruling this objection, on both of the reasons here stated.

The next objection was to the reading of the said certificate of deposit. The handwriting of James G. L. Huey, who signed it, as secretary, was proved; that made it competent for the plaintiff to read it, unless some special reason existed why it should not be read. No such reason is shown by the objection. The objection is a mere general objection, and was properly overruled for that reason. We hold it was altogether proper to permit the certificate of deposit to be read.

The evidence of the witness Thomasson, and the evidence given by the plaintiff himself, sufficiently proved, at least *prima facie*, that Huey, by whom the paper was signed, was, or, at least, acted for years, without objection on the part of the defendant, as secretary of the company; besides that, he was one of the corporators named in the charter. The certificate of deposit was also good evidence under the common count, for money had and received; it showed the defendant had received the plaintiff's money, and promised to return it, on the return of the said certificate. There is no error in overruling this objection.

The next objection is, that the plaintiff was not a competent witness in his own behalf. The defendant makes two points in this objection, both to the competency of the the plaintiff: 1. That he was not competent when the suit was brought; 2. That he was not competent because the defendant was a corporation. We think there is nothing in either of these points. It is enough that a witness is competent, when offered. The other, that the defendant was a corporation, and, therefore, the plaintiff was incompetent, has no force in it now; before the passage of the act of

the 14th February, 1867, the objection would have been a good one. That act clearly changed the law on this subject, and makes the plaintiff a competent witness, except in cases against executors and administrators. The cases referred to by the appellant's counsel, are cases under the old law, and not applicable as the law now is. The reason that led the court to hold in those cases, (and we think properly,) that the plaintiff was not competent, in cases against corporations aggregate, is, " that a corporation aggregate, could not take upon itself an oath, and upon that oath swear that the testimony proposed to be given is untrue. The defendant also objected to the evidence given by the plaintiff; but the objection is a general one, and for that reason was rightly overruled. The evidence, however, is proper evidence under the issues in this case; at least, a part of it is so ; it tended to prove, and we think did prove, that the company exercised the privileges granted in its charter; that said Huey was the secretary of the company, and did their business for several years , that he received the money deposited, and gave the certificate of deposit, as such secretary. It also proves the demand of payment was made of him, as secretary. But the appellant says, the evidence does not show he was secretary at the time the demand was made. It certainly tends to prove it ; but if he was secretary when the deposit was made, and ceased to be so before the demand, the defendant should have proved it; it is matter of defense. The plaintiff not only states that he made the demand of him as secretary, but that it was made in the office of the company.

It is also objected, that the act incorporating the Talladega Company never conferred any powers on that company ; never became a vital, living act, because it was not shown that the act incorporating the Tuskegee Company was ever accepted by said company, or that said company ever acted under it ; never opened books of subscription, &c.; never elected a directory, or a president ; that the Talladega act depended upon the Tuskegee act ; to use the language of appellant's counsel, " It was a mistletoe growing on and depending for its life on the Tuskegee act." We

are, however, of the opinion that it is altogether immaterial what the Tuskegee Company did, or did not do; it in no way affects the rights and privileges of the Talladega Company, under their charter. It is pressed upon the court, that to constitute a corporation, under said acts, it was necessary that the *identical persons* named in said acts, or a majority of them, should have accepted the provisions of said acts; opened books for subscription to the capital stock of said companies; obtained the subscriptions of stock required, and organized, by electing directors and a president, as required by said acts. But, we hold that these acts, by their own vigor, made the persons named in each a body politic and corporate. After naming the persons, each act declares that they, " and such others as may hereafter become associated with them for that purpose and their successors, are hereby declared and created a body politic and corporate." They therefore become corporations immediately on the passage of the said acts; but to exercise the privileges, it was necessary for them to organize by obtaining stock, &c., and electing a board of directors and a president. These acts are altogether unlike acts that authorize persons to become a corporation, by doing certain things; in such cases, the things to be done are conditions that must be complied with before they can become a body corporate. As a general proposition, it is true that the charter of a corporation must be accepted, but in cases of private corporations like these under consideration, created for individual benefit, the presumption is, that they are created at the instance and on the request of the parties to be benefited thereby, and, consequently, are accepted by them. If, therefore, they are found exercising the privileges granted, it will be almost conclusive evidence of the fact of acceptance. This view disposes of the fifth and sixth charges asked by the defendant and denied by the court.

We think all the charges were properly refused. The first asked the court to charge the jury that the certificate of deposit, read in evidence, did not entitle the plaintiff to a recovery. We believe the said certificate, with the other evidence, did authorize the jury to find for the plaintiff. If

the object of the charge was to instruct the jury that the certificate, by itself, did not entitle the plaintiff to recover, it should have been so framed, and, if it had been so framed, it should have been refused ; it would then have been based on a part of the evidence only, and might, and most probably would have misled the jury.   The second charge was properly refused, because, if the company, under the acts of the legislature, was a living corporation, then it was clearly bound by the certificate of deposit read in evidence by the plaintiffs.   We hold in this opinion that the evidence was sufficient, at least, to go to the jury, to show them that the company accepted their charter, acted under it, and that said James G. L. Huey was their secretary, and consequently authorized to bind the company, unless the charter did not permit the company to receive money on deposit, or it was an act prohibited by it.   It is insisted by appellant's counsel, that the receiving the deposit in this case and giving the certificate, is an act of banking, and prohibited by the charter, which says, " that said corporation shall not make or issue any bills, bonds, notes or other securities to circulate in the community as money.   It is true, banks do receive money on deposit and give certificates therefor, and in a qualified sense these are acts of banking, but not acts exclusively confined to banks, and any merchant or other citizen may do the same thing.   It is no doubt a well settled principle, that the authority of corporations is limited by their chartered powers, and the proper and necessary means of executing those powers, and that all contracts of corporations, which they have not power to make, are void, and courts of justice will not enforce them.— *Grand Lodge of Alabama v. Waddell*, 26 Ala. 313.   But, we hold that a fair and reasonable construction of the powers granted to this company, authorizes it to receive money on deposit and give certificates therefor, and this power is not affected by the proviso in the fifth section of the act that prohibits the corporation from issuing bills, bonds, notes or other securities to circulate in the community as money.   Said fifth section authorizes the company " to receive from any free person or persons, or from any corporation, deposits on trust."

What is a deposit on trust? There is nothing in the act itself, or in the record, to show what it is. We learn from the books that there are two kinds of deposits—one called a general, and the other a special deposit. A special deposit is where the specific money, the very silver or gold coin, or bills deposited, are to be returned, and not an equivalent. A general deposit is where the money deposited is not itself to be returned, but an equivalent in money, (that is, a like sum is to be returned); such a deposit is said to be equivalent to a loan. The title to a special deposit remains, notwithstanding the deposit, in the depositor; in a general deposit, the money deposited becomes the money of the depositary.—Hedgwood & Homan's Manual for Notaries and Bankers, § 19. We hold that " deposits on trust," mentioned .in the act, may embrace both general and special deposits; the company, though called an insurance company, has many powers conferred upon it, not necessarily connected with the business of insurance. It may not only receive deposits, but it has the power to invest its money and property, in any thing, and in any manner, which it is lawful *for a citizen* to invest money or property in. It has the power also to purchase, *discount* and sell bills of exchange and promissory notes. The discounting of promissory notes and bills of exchange is certainly a banking power, and one largely exercised by all banks. From these considerations, we hold the prohibition in the act is to be confined to the issuing of bills, bonds and notes, to circulate in the community as money ; but, it is said, certificates like the one in this case may pass from hand to hand, and in this way circulate in the community as money. True, they may pass from hand to hand, but they can hardly ever circulate, in any proper sense, in the community, as money. In the first place, if issued on real deposits, the number can never be sufficient to become a currency among the people. In the second place, they will not be of the proper sums to circulate as money. The circulation in the community, when it consists of paper, consists, at least the larger part of it, in bills from one to ten dollars, and certificates on real deposits will seldom, if ever, be of such sums. The

Talladega Insurance Company v. Landers.

prohibition in the act, therefore, does not embrace this certificate. It was lawfully issued, and is obligatory on the company; this being so, the fourth charge, that the plaintiff could not recover on the money count, was properly refused. The certificate is evidence of money had and received, and if there should appear on the trial, a variance in the description of the certificate, the plaintiff might recover on the count for money had and received. The third charge, if the view we have taken of this case be correct, was rightly overruled; it is, that the defendant, as a corporation, had no power to receive money on deposit. The elaborate manner in which this case was argued by the appellant's counsel, has induced us to examine, with the greater care, the authorities referred to and the objections made by him, but the examination has failed to satisfy us that there is any available error in the record. The judgment of the court below is therefore affirmed, with costs.

NOTE BY REPORTER.—At a subsequent day of the term, the following response was made to appellant's application for a rehearing.

PECK, C. J.—The application for a rehearing has been carefully examined, but the court remains satisfied with the opinion delivered; a rehearing is, therefore, denied.