# Tabler, Crudup & Co. v. Sheffield Land, Iron & Coal Co.

*Action on Common Counts, for Money Paid.*

1. *When action lies for money paid.*—To maintain an action for money paid by plaintiffs to the holders of certain non-transferable "labor-tickets" issued by the defendant corporation to workmen in its employment, it must be shown that plaintiffs took the tickets at the instance or request of the corporation, acting through some agent lawfully authorized to bind it; or, if the agreement was made by an agent not duly authorized, that it was afterwards ratified by the corporation.

2. *General charge on evidence.*—A general charge should never be given in favor of either party, unless the evidence is so clear and convincing that a demurrer might properly be sustained to it; never when

20

there is a conflict in the evidence, or when it is circumstantial, or when a material fact rests in inference.

3. *Testimony of party as to transactions with decedent.*—In an action by a partnership against a private corporation, one of the plaintiffs can not testify as a witness in their behalf to a transaction or conversation between himself and the president or general manager, since deceased, of the corporation (Code, § 2765).

4. *Ratification of agent's unauthorized act or agreement.*—A payment by the defendant corporation, on presentation, of labor-tickets which the plaintiffs had taken from the holders to whom they were issued, on the faith of a promise by an agent of the corporation that they would be paid on presentation, is a ratification of the agent's promise, and authorizes plaintffis to continue to purchase the tickets until notified that they would not be paid.

APPEAL from the Circuit Court of Colbert.

Tried before the Hon. HENRY C. SPEAKE.

This action was brought by the appellants, suing as partners, against the appellee, a private corporation; and was commenced on the 25th August, 1884. The cause of action was numerous printed certificates, called "labor-tickets," which the defendant had issued to the workmen in its employment, for their wages, and each of which was marked "not transferable;" and the plaintiffs claimed to have taken or purchased them from the workmen to whom they were issued, at the special instance and request of the defendant, through its agents, who promised that the corporation would pay or redeem them on presentation. On the second trial, as shown by the present record, the special counts on the tickets were struck out by amendment, leaving only the common counts; to which the defendant pleaded the general issue, with leave to give any special matter in evidence. The tickets were in the form shown by the former report of the case (79 Ala. 377), and the letters *E. P. M.* were written across the end of each, being the initials of one E. P. Miller, who was, as he testified on the trial, at that time in the employment of the defendant corporation "as general superintendent of the hands employed by defendant to clear off and grade the streets and avenues of Sheffield." Said Miller testified, also, that prior to the issue of these tickets the workmen were paid only once a month, and became dissatisfied because they could not procure provisions and medicines when they needed them; that he stated these facts to Walter Gordon, who was then the president and general manager of the defendant corporation, "and from whom he received all his instructions and orders about the work," and the tickets were prepared by arrangement between them to meet this necessity; that the tickets were left in his possession, to be given out to the

[Tabler, Crudup & Co. v. Sheffield Land, Iron & Coal Co.]

workmen as earned, his initials being written on each when it was issued; "that although the tickets were marked 'not transferable,' it was understood and agreed between him and said Gordon, at the time, that the workmen were to be informed they could use said tickets at the defendant's commissary store in Sheffield, at two boarding houses there, and at plaintiffs' commissary store in Tuscumbia, to obtain supplies and medicines, or money to buy them with; that he so informed the workmen under him, and also informed plaintiffs of the arrangement, under the directions of said Gordon, and requested them to let the hands have commissary supplies, medicines and money, and to take said tickets in payment, and that defendant would take up the tickets, and pay them on presentation;" also, that plaintiffs did furnish supplies and medicines to the workmen under this arrangement, taking said tickets in payment. W. M. Wiley, who was a clerk in plaintiffs' store at the time, testified in substance that plaintiffs furnished goods, medicines, &c., to defendant's workmen, taking said tickets in payment, to the amount of nearly $1,000. D. L. Duncan, one of the plaintiffs, was also examined as a witness on their behalf, and testified that they took the tickets from defendant's workmen on the faith of the statements made by Miller as to their payment by the defendant, and of similar statements afterwards made to them by said Gordon as president; but the conversation with Gordon was excluded as evidence, on objection by the defendant, and the plaintiffs excepted. Duncan testified, also, that on May 20th, 1884, he carried a large number of tickets which they had taken, amounting to $1,302.05, to the defendant's office in Sheffield, and presented them for payment; that "the amount was paid to him by defendant, acting through A. H. Moses, the vice-president and general manager, or by some one acting for defendant in his presence;" and that the tickets on which this action was founded were taken by plaintiffs afterwards, before they heard that Moses objected to their taking them. J. Nathan was then introduced as a witness by plaintiffs, and testified that he was acting as paymaster for the defendant at the time of said payment on May 20th, 1884, "and that on the day he made said payment he told one J. T. Cooper, a clerk and bookkeeper of plaintiff, that no more of said tickets would be paid by defendant except to the laborers themselves." Said Duncan was then recalled by plaintiffs, "and testified that he was present when the payment alluded to by Nathan was

[Tabler, Crudup & Co. v. Sheffield Land, Iron & Coal Co.]

made, and that he heard no such conversation as that made by said Nathan."

This was all the evidence introduced by plaintiffs, and defendants introduced none. The court thereupon charged the jury, on request, that they must find for the defendant, if they believed the evidence. The plaintiffs excepted to this charge, and they here assign it as error.

J. B. MOORE, and JAMES JACKSON, for appellants.—Gordon was the president and general manager of the defendant corporation, and the plaintiffs were justified in presuming that he had the right to bind it by his contracts and engagements in his name—Mor. Corp. §§ 538,616; *Gold Life Ins. Co. v. A. & M. Asso.*, 54 Ala. 73; *Oxford Ins. Co. v. Spradley*, 46 Ala. 98; Angell & Ames on Corporations, 198; *Railway Co. v. McCarthy*, 96 U. S. 258. Even if Gordon had no authority to make such contract, yet his promise or contract might be ratified by the corporation; and the payment made on May 20th, 1884, was a ratification of it.—*McKenzie v. Stevens*, 19 Ala. 691; *Taylor v. A. & M. Asso.*, 68 Ala. 238; 2 Waterman on Corporations, 370; 96 U. S. 258. The general charge of the court was erroneous. 67 Ala. 13; 70 Ala. 499; 73 Ala. 295.

EMMET O'NEAL, and WATTS and SON, *contra*, cited *Stanley v. Sheffield Land, Iron & Coal Co.*, 83 Ala. 262; and *Tabler, Crudup & Co. v. Sheffield Land, Iron and Coal Co.*, 79 Ala. 377.

STONE, C. J.—This is the second time the present case has been before this court on appeal. When here before, the appeal was prosecuted from the rulings of the lower court upon the pleadings; and this court held, that the plaintiffs, who are appellants in both appeals, could not maintain their action as transferrees of the "labor-tickets."—*Tabler, Crudup & Co. v. Sheffield Land, Iron & Coal Co.*, 79 Ala. 377. Upon remandment of the cause, the special counts of the complaint, in which plaintiffs claimed a recovery as transferrees of the "labor-tickets," were abandoned, and issue was joined on the common counts.

The right of the plaintiffs to recover in this action can be maintained only upon the theory, that they took up the "labor-tickets"—the basis of the suit—at the instance or request of the defendant corporation, acting through some

[Tabler, Crudup & Co. v. Sheffield Land, Iron & Coal Co.]

lawfully authorized agent or agents; or, if upon agreement with some officer or agent not duly authorized to bind the company thereby, that the defendant corporation subsequently ratified the agreement.—*Stanley v. S. L., I. & C. Co.*, 83 Ala. 260.

There was much testimony introduced by the plaintiffs, tending to show that they became the purchasers of the said "labor-tickets," giving in exchange therefor "supplies, and medicines, or money," under a special arrangement and agreement with the president, who was also general manager, and with a special agent of the defendent, that the corporation would take up the said "labor-tickets," for their full value, upon presentation by the plaintiffs. There was also evidence on the part of the plaintiffs, tending to show that upon presentation of a number of such tickets, the defendant paid the plaintiffs the full amount represented by them. There was no conflict in this evidence. One witness for plaintiff, however, testified that "on the day he made such payment to plaintiffs, he told one J. T. Cooper, a book-keeper and clerk of plaintiffs, that no more of said tickets would be paid by defendant, except to the laborers themselves;" while Duncan, one of the plaintiffs, testified that on the day of the payment he was present, and "heard no such conversation" as that testified to by the witness. This constitutes a conflict in the testimony, which will not authorize the general charge. To support the general charge, the evidence must be so clear and convincing as that the court could rightly sustain a demurrer to the evidence of the opposite party. If the evidence be in conflict, or if it be circumstantial, or if a material fact in the case rests in inference, the general charge should not be given. The Circuit Court erred in giving the charge requested by the defendant.—*Ala. Gold Life Ins. Co. v. Mobile Mut. Ins. Co.*, 81 Ala. 329; *Seals v. Edmondson*, 73 Ala. 295; *S. & N. Ala. R. R. Co. v. Small*, 70 Ala. 499; *Smoot v. M. & M. Railway Co.*, 67 Ala. 13.

There was no error in the court excluding that part of the testimony of the witness Duncan relating to an alleged conversation had between him and one Walter Gordon, who was at the time president and general manager of the defendant corporation, but was shown to be deceased when the trial was had. It was evidence of one interested in the result of the suit, and related to an agreement or conversation alleged to have been engaged in by one who, at the time, occupied a

fiduciary relation to the defendant. The statute is very plain in this respect; and the adjudications thereon render further comment unnecessary, to give a clearer understanding of its meaning.—Code, 1886, § 2765, and citations; *Miller v. Cannon*, 84 Ala. 59; *Stanley v. S. L., I. & Co.*, 83 Ala. 260; *Warten v. Strane*, 82 Ala. 311.

The payment, testified to have been made by the defendant to the plaintiffs on the 20th of May, 1884, was after the alleged agreement entered into with plaintiffs. If, after said agreement, the defendant made such payment, with a full knowledge of all the facts and circumstances, it thereby ratified said agreement, and bound itself to meet all obligations arising therefrom. If the "labor-tickets" had once been paid without objection or disapproval by the corporation, the plaintiffs were justified in indulging the presumption, that all other tickets purchased by them would be also paid. Such ratification would bind the defendant corporation to pay the tickets bought by plaintiffs, until they were notified that no more of the tickets would be paid "except to the employees themselves."

By such payment, the defendant recognized and ratified the authority of its agent to bind it by the agreement with plaintiffs; and until notice was brought home to the plaintiffs that no more of the tickets would be paid by them, the obligation to pay would still rest with the defendant, and is sufficient to maintain an action against the corporation. The principle is the same as when a father, without objection, pays an account contracted by his minor son; the payment is equivalent to a recognition by the father of the son's authority to bind him, and will render him liable on a similar account subsequently contracted.—2 Greenl. Ev. (14th Ed), §§ 65–66; Story on Agency, § 56; 1 Pars. on Contr., §§ 50–51; Ewell's Evans on Agency, p. 66; 2 Waterman on Law of Corp., 370; 2 Morawetz on Corp., §§ 604, 630–632; *Taylor v. A. & M. Asso.*, 68 Ala. 229; *Talladega Ins. Co. v. Landers*, 43 Ala. 136; *Stone v. Britton*, 22 Ala. 542; *McKenzie v. Stevens*, 19 Ala. 691; *Whitney Arms Co. v. Barlow*, 63 N. Y. 62; *Railway Co. v. McCarthy*, 96 U. S. 258; *Hurd v. Green*, 17 Hun, 327; *Howe v. Keeler*, 57 Conn. 538.

The judgment is reversed, and the cause remanded.

CLOPTON, J., not sitting.