(134 So. 677)
**GREEN, Superintendent of Banks, v. GRAVES et al.**

6 Div. 901.

Court of Appeals of Alabama.
May 12, 1931.

Wilkinson & Burton and Frank A. Wilkinson, all of Birmingham, for appellant.

John C. Morrow, of Birmingham, for appellees.

## SAMFORD, J.

The plaintiff, as superintendent of banks of the state, took over the affairs of the Woodlawn Savings Bank and among its assets was the note sued on in this action. The note was dated April 28, 1926, signed by the defendants, payable to Jefferson Dairy Company, the original amount being $292.60, on which was a credit of $40. The note was admitted in evidence without objection. The defendants pleaded payment, and in support of said plea offered evidence tending to prove the following state of facts:

That the note sued on was given for stock in Jefferson Dairies Company, under an agreement whereby defendants were to deliver milk to the Jefferson Dairies Company and the Jefferson Dairies Company was to deduct from each such milk delivery 5 cents on each gallon to be credited on the note and paid every two weeks to the Woodlawn Savings Bank, that, after the execution of this note, defendants continued to deliver milk to the Jefferson Dairies Company, and that there was "cut" or deducted from such milk deliveries the amount of this note in accordance with the agreement, and in that way the note was paid. The above facts seem to be undisputed, and, if this were all, defendants' plea of payment would seem to be made out so far as the Jefferson Dairies Company is concerned. The crux of this case is, Can the payment to the Jefferson Dairies Company be charged to appellant? On this point it appears that A. W. Bell was president and a director in the Jefferson Dairies Company and president and manager of the Woodlawn Saving Bank at the time of the various transactions affecting this note, and that at the time of trial Bell was dead. Over the objection and exception of plaintiff it was testified to by P. W. Acton that he was a stockholder and director in the Jefferson Dairies Company, and that this and other notes were given for stock to which they had subscribed in the dairies company with the understanding and agreement with A. W. Bell, president and manager of the Woodlawn Savings Bank, the note for stock should be given by the subscribers and discounted with the savings bank to be paid by delivery of milk to the dairies company, 5 cents on each gallon to be deducted from each delivery, and each two weeks thereafter the dairies company was to pay the amount to the savings bank. In other words, Bell, being an officer and director in both companies, met with the directors and stockholders of the dairies company and agreed that for stock in the dairies company notes should be executed by purchasers, payable to the dairies company, discounted by the dairies company with the savings bank, and payments were to be made by the obligors to the dairies company who in turn and each two weeks pay the amounts thus collected to the savings bank. To the same import was the testimony of Dewitt Tittle, who was a stockholder of the dairies company. It is insisted on the part of appellant that this testimony was not admissible, as being in violation of section 7721 of the Code of 1923, which provides: "That no person having a pecuniary interest in the result of the suit or proceeding shall be allowed to testify against the party to whom his interest is opposed, as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the suit or proceeding, or when such deceased person, at the time of such transaction or statement, acted in any representative or fiduciary relation whatsoever to the party against whom such testimony is sought to be introduced."

In full recognition of the rule as stated in Tabler, Crudup Co. v. Sheffield Land Co., 87 Ala. 305, 6 So. 196, we hold that the

witnesses Tittle and Acton were competent to testify to the transactions between Bell as president of the savings bank and the stockholders of the dairies company whereby arrangements were made for subscription to stock in the dairies company, execution of notes in payment thereof, discount of these notes with the savings bank and the agency of the dairies company in collecting these notes and payments to the savings bank. As to admission of testimony on this question from the two witnesses Tittle and Acton, the trial court did not commit reversible error. But, as to the testimony of the defendants H. M. Graves and H. E. Graves, the rule fixed by section 7721 of the Code of 1923 applies. These witnesses, being interested in the outcome of the suit, may not testify as to transactions had with or growing out of representations made by Bell, the manager of the savings bank. Nor can they give testimony the direct purpose of which is to corroborate or strengthen other evidence given of a transaction or a statement made by Bell, deceased, and at the time acting in a fiduciary capacity for the Woodlawn Savings Bank. Payne's Ex'r v. Long, 131 Ala. 438, 31 So. 77; Englehart v. Richter, Ex'r, 136 Ala. 562, 33 So. 939; Tabler Crudup Co. v. Sheffield Land Co., 87 Ala. 305, 6 So. 196.

In line with the above it was also error to permit the two defendants to testify that as long as Bell lived he never called on defendants for payment of the note.

It was competent for these defendants to testify that they paid the amount of the note sued on to the dairies company and that it was paid by the dairies company deducting 5 cents from each gallon of milk delivered to it until the amount aggregated the sum named in the note. As to whether the dairies company was acting as agent for the savings bank in making the collection was a question to be determined by the jury from the testimony of other witnesses not interested in the outcome of the suit.

It is true, as insisted by appellant in his brief, that the inherent powers of the president of a bank are limited, but in this case it is testified and not disputed that Bell was not only the president, but the manager of the bank, to the exclusion of the cashier, in all matters of credits. Under the usage and customs of modern banking, the rule that the power of the president is limited to transactions expressly authorized by the board of directors no longer obtains, where the president is left in the active management of the bank and its affairs. 7 Corpus Juris, 547 (155).

On another trial the issues will be as insisted by appellant in his brief: (1) That A. W. Bell, in making the arrangements for the collection of the notes discounted by the bank, was acting for and in behalf of the bank. (2) That at the time he was the general manager of the affairs of the bank. (3) That the Jefferson Dairies Company was the agent for the bank to collect the note sued on and to receive deliveries of milk in payment thereof. (4) That the defendant in compliance with the arrangement delivered to the dairies company the amount of milk necessary to pay the note and that the payment was so received.

All of the foregoing are questions for the jury from facts directly proven by competent witnesses or to be inferred by the acts and conduct of the parties.

For the errors pointed out, the judgment is reversed, and the cause is remanded.

Reversed and remanded.