# Alabama Gold Life Insurance Company *v.* The Central Agricultural and Mechanical Association.

## Creditor's Bill.

1. *Corporation; power of, to borrow money.*—A corporation, incorporated under the general laws of this State, has power to borrow money, to purchase and improve real estate, to enable it to carry into effect the purposes of its incorporation.

2. *Contracts corporate; presumption as to.*—A bill to enforce a contract, against a corporation, but not setting out the purposes of its incorporation, or its powers, is not demurrable because of its failure to show affirmatively that the defendant corporation had capacity to contract. *Prima facie* no presumption of illegality, abuse or excess of corporate powers attaches to corporate contracts, and the burden of showing their invalidity rests on him who assails them.

APPEAL from Chancery Court of Dallas.

Heard before Hon. CHARLES TURNER.

This was a general creditor's bill, filed by appellant, in behalf of itself and all other creditors of the defendant corporation, against "The Central Agricultural and Mechanical Association," and certain of its stockholders. The bill alleged that the "defendant was a joint-stock company, and a body corporate created under the general law of the State of Alabama, passed for the purpose of authorizing the creation of corporations, without special acts of the legislature therefor." The bill showed that the appellant had loaned a large sum of money to the defendant corporation, taking to secure the same a mortgage on certain real estate; that the

[Alabama Gold Life Ins. Co. v. The Central Agr. and Mech. Association.]

money so loaned was for the purpose of paying for the real estate purchased by the corporation in the city of Selma, for fair grounds, and for the purpose of making necessary improvements thereon, to enable the association to effect the object of its incorporation; and that the money, real estate and improvements thereon were necessary for that purpose. It alleged that a sale of the property mortgaged, had failed to satisfy the debt due complainant, and also that by law the stockholders, who had paid up their stock were liable for the debts of the corporation, to an amount equal to amount of stock held by them, and that those whose subscriptions were unpaid, were liable for twice the amount subscribed. The bill prayed a discovery; that the amount due complainants be ascertained; that the stockholders be made parties to the bill—that the amount to be paid by each stockholder might be settled, and for general relief. A demurrer to the bill because it failed to show that "The Central Agricultural and Mechanical Association" had any power to borrow the money, the recovery of which is sought by the bill, was sustained by the chancellor, and hence this appeal.

BROOKS, HARALSON & ROY, for appellant.—Corporations may borrow, *without express authority* in that behalf, provided the nature of their undertaking or concerns be such as to render borrowing, if not actually indispensable, at least very useful, for the proper conduct of the same. Every corporation, *unless prohibited by law,* can incur obligations as borrowers of money to carry on the legitimate business, for which it was incorporated, although not specially authorized to borrow by its charter.—Greene's Brice's Ultra Vires, 115, and note; *Curtis v. Leavit,* 15 N. Y. 9; 55 Ill. 413; 24 Barber 20; 25 Barb. 146; 42 Barb. 122; 7 Wend. 31; 19 N. Y. 152; 21 N. Y. 296; 26 N. Y. 418; 12 S. & R. 256; 9 Ind. 359; 13 Wis. 653.

MORGAN, LAPSLEY & NELSON, and PETTUS & DAWSON, *contra.* The authority of corporations is limited by their chartered powers, and the necessary and proper means of executing those powers. Private corporations can claim nothing which is not clearly given them; there can be no implications in their favor, and all doubts of their power are resolved against them. This is the spirit of the decisions in this State and policy of the State, *Smith v. Ala. Life Ins. Co.,* 4 Ala. 558; *Grand Lodge v. Waddell,* 36 Ala. 313, and cases there cited. No express authority is given to borrow money by the section of the Code under which the defendant was incorporated, and if borrowing money was not *necessary* to the exercise of the

power given, the power to do so does not exist. Joint stock companies are only bound by contracts made by the directors within the scope of their authority.—Greene's Brices Ultra Vires, 398; Angell & Ames on Corporations, § 299.

BRICKELL, C. J.—Corporations, public or private, in this country, are of legislative creation, deriving existence and capacity either from a special act of incorporation, or a general statute authorizing their organization, prescribing their powers, duties and liabilities. The bill does not show when the corporation making the contract was incorporated, nor the purposes of its incorporation, nor the powers conferred on it. It does not of consequence disclose affirmatively that the contract sought to be enforced is not *ultra vires* and a *nudum pactum*. Capacity to contract, however, is an incidental corporate power, limited only to such contracts as are necessary and proper to enable the corporation to accomplish the purposes of its creation. There is no presumption of illegality, or abuse or excess of power attaching to its contracts. *Prima facie* they are valid, and the burthen of showing invalidity, rests on those impeaching them. Greene's Brice's Ultra Vires, 39-42. The assignments of demurrer based on the want of averments in the bill, showing the capacity of the corporation to make the contract sought to be enforced, are not therefore well taken. The inquiry propounded by the other assignments of demurrer, is, whether it appears from the bill *affirmatively* that the corporation was without power to make the contract. It must be admitted the bill is very scant in its statements, and that the proposition on which we are compelled to pass, is rather abstract in form. If the time of the organization of the corporation had been stated positively, and not left as mere matter of inference from the time of the making of the contract—if the purposes and objects of incorporation, so that the character of the corporation could be certainly known, and the contents of the articles of incorporation had been definitely stated, the decision could be limited to actual facts, and not extended as it must now be, to the capacity of private corporations created under the general law, whatever may be their character or purposes. No proper inference or intendment aiding in the decision, can be made from the mere name or style of the corporation.

The contract is averred to have been made on the 20th day of June, 1871, and it is further averred in the original bill, that the corporation making it, "The Central Agricultural and Mechanical Association is a joint stock company and a body corporate created under the general law of the

State of Alabama, passed for the purpose of authorizing the creation of corporations without special act of the legislature therefor ;" and the averment of the second amended bill, that the debt due the appellant was for money by the corporation, borrowed and used to purchase real estate, and make improvements thereon, to enable the corporation to carry into effect the purposes for which it was created.

The second title of part second of the Revised Code, is devoted to " corporations." The first chapter to " free banking corporations," which was originally enacted, when the Constitution imposed peculiar restrictions and limitations on the establishment of banks. The second chapter relates to the incorporation of "macadamized, graded, turnpike, rail or plank road companies." The third chapter is devoted to the incorporation of companies for " mining, quarrying and manufacturing purposes, or forming agricultural or literary societies, or for the purposes of building or loan associations," and the " incorporation of steamship companies." The fourth chapter defines the powers of private corporations, for the creation of which the previous chapters provided, the liabilities of the stockholders, and provisions in reference to liquidation, in the event of dissolution or forfeiture. Of the powers conferred, is that of holding, purchasing, disposing of and conveying such real and personal estate as is limited by its charter, and if not limited, such an amount as the business of the corporation requires.—R. C. §§ 1767-8. No private corporation possesses or can exercise any other than the powers enumerated, or such as are expressly given in its charter, except such as are necessary to the exercise of powers expressly enumerated or given.—R. C. § 1769. Statutes subsequent to the Code and prior to the making of the contract sought to be enforced, have changed in some respects, the mode of incorporation, and extended the objects for which private corporations may be formed, but have not enlarged or diminished the powers it is declared they possess and can exercise. Confining attention to the allegations of the bill, the question is, has a corporation, incorporated under the general law, power to borrow money to purchase and improve real estate, to enable it to carry into effect the purposes of its incorporation? We repeat, the bill is scant and vague in its averments, as to the time, or purposes of the corporation, and we are uninformed whether the corporate power of acquiring and disposing of personal and real property, was subject to any other limitation or restriction than the nature and necessities of its business by implication impose. The present demurrer raises only the question we

have stated, and if that question must be answered affirmatively, the decree of the chancellor is erroneous.

The general principle is, that a corporation can make no contracts, and do no acts, except such as are authorized by its charter. From the charter it derives all its powers, and the capacity of exercising them. Any contract made by it not necessary and proper, directly or indirectly, to enable it to answer the purpose of its creation, is void, and neither a court of law, or of equity can enforce it.—*Grand Lodge v. Waddell*, 36 Ala. 313; *Smith v. Ala. Life Ins. & Trust Co.*, 4 Ala. 558; *City Council v. M. & W. Plank Road Co.*, 31 Ala. 76. It must not be understood, however, that the charter, whether it is of special legislative enactment, or derived from general statutory provisions, must expressly confer the power of making contracts. As we have said, the capacity to contract is an incidental corporate power, and if the special act of incorporation, or the general statutory law is silent, as to the contracts into which a corporation may enter, it has the power to make all such contracts as are necessary and proper to enable it to accomplish the purposes of its creation. Ang. & Ames on Corp. § 271. This is the theory on which the general statutes for the organization of private corporations proceed, for though the powers of such corporation are enumerated, that of making contracts is not included, but is left to implication from the powers mentioned, and the character and purposes of the corporation. It is not indispensable, therefore, to the validity of a contract made by a corporation, for money borrowed, that the power to borrow money should be expressly conferred.—Ang. & Ames on Corp. § 257. If the nature and character of the corporation, render the power, a usual and proper mode of accomplishing its objects and purposes, the power is incidental or implied. When the corporation has, as all private corporations have under the general law providing for their creation, the capacity of acquiring and holding personal and real property, the mode of acquiring not being limited, they may acquire it by purchase, or by gift. The corporation has the capacity of an individual in this respect, within the scope of its legitimate objects and purposes. Having the power to acquire and hold personal and real estate, by purchase, it has, as an incident, the power to borrow money to make the purchase. The exercise of such power may be advantageous and useful, enabling the corporation the sooner to put its powers into active exercise, and to acquire the necessary property on terms more profitable to its stockholders. It would scarcely be affirmed that the power to acquire and hold real and personal estate, must be so narrowed that the corporation could

[Burns v. Hendrix.]

not contract a debt for its purchase—that at the very moment of the purchase and conveyance, the purchase money must be counted out, or the purchase and conveyance is void. If the necessities and interests of the corporation require it, which must be determined by those having charge of its affairs, and entrusted with the power and duty, that a debt be contracted in the acquisition of the necessary property, the power to contract it cannot be denied. If more advantageous to borrow the money, and make immediate payment, than to contract the debt for the purchase money with the vendor, the contract is equally within the scope of corporate power, and valid. The authorities, we think, support the proposition that every private corporation, unless prohibited, may borrow money to carry out the purposes of its creation. In addition to the authorities referred to by the counsel for the appellant, we refer to *Fay v. Noble*, 12 Cush. 1; *Davis v. Proprietors of Meeting House*, 8 Met. 321; *Union Bank v. Jacobs*, 6 Humph. 515; *Barry v. Merch. Ex. Co.*, 1 Sandf. Ch. 280; *Burr v. McDonald*, 3 Gratt. 215.

The result is, the chancellor erred in sustaining the demurrer, and the decree must be reversed, the demurrer overruled, and the cause remanded.