# Talladega Insurance Company *v.* Peacock, Adm'r.

*Action on Promissory Note; Plea, non est factum.*

| | |
|---|---|
| 67 | 253 |
| 96 | 258 |
| 67 | 253 |
| 101 | 569 |
| 67 | 253 |
| 107 | 643 |
| 67 | 253 |
| 121 | 625 |
| 67 | 253 |
| 126 | 584 |

1. *Corporation; power to borrow money.*—A corporation, which is authorized by its charter to transact the business of life, fire, and marine insurance, receive money on deposit, collect promissory notes, and bills of exchange, lend money, and discount or sell such notes, or bills, and to "borrow money, and issue its bonds therefor," is not restricted, by the latter provision, to making loans secured by bonds, but has the incidental and implied power, common to all such corporations, to borrow money, and make negotiable, or non-negotiable paper, and give such securities as may be deemed most advantageous.

2. *Same; how persons proved to be officers of.*—Strangers can not be required to prove the appointment of officers, or agents, of corporations, by written

[Talladega Ins. Co. v. Peacock, Adm'r.]

evidence, but it may be inferred from the recognition, or continuous acquiescence, by the corporation in the acts of such officers.

3. *Same; presumption against, when it fails to prove appointment of officer.*—If there is written evidence of such appointment, it is within the peculiar knowledge, and in the exclusive possession of, the corporation, and whatever presumption can be drawn, on account of its absence, must be visited on the corporation, which has voluntarily assumed the attitude of neglecting, or refusing to produce, evidence which was in its possession.

4. *Evidence; when to be excluded.*—It is not often necessary, and it is but seldom that the court can prescribe the order in which a party may introduce his evidence, but when it is all produced, and it is wholly insufficient to support the cause of action, or the grounds of defense, or if any part of it is then irrelevant, because unconnected with other evidence, the court should, on motion, exclude all the evidence, or such unconnected part of it.

5. *Burden of proof; when on plaintiff, in suit against corporation.*—When, in an action against a corporation, on a note for money borrowed by its secretary, and which was executed by him, and signed with the corporate name, "by him, as secretary," the defendant interposes a sworn plea of *non est factum,* the burden of proof is on the plaintiff to show that such person was the secretary of the corporation, and was authorized to borrow money, before the note is admissible in evidence.

6. *Agency; how proved.*—The general rule is, that agency must be proved otherwise than by the mere act of the agent, before it can be assumed that such acts are binding on the principal; and the mere acts of the assumed agent, not accompanied by evidence tending to show that the principal had knowledge of, or assented thereto, are not competent evidence to be submitted to a jury.

7. *Same; same.*—But when there is any evidence tending to show the assent of the principal to the act of the agent. these acts, in connection with the assent of the principal thereto, must go to the jury as evidence; and if the acts of the supposed agent are so continuous in their character, and of such a nature as to furnish, in themselves, any reasonable ground of inference that they were known to the principal, and that, in the absence of authority, he would not have suffered them, such acts are competent evidence to be submitted to the jury.

8. *Corporation; person may be proved to be officer of, by certain acts.*—Evidence that one openly and notoriously transacted the general business of a corporation, had possession and care of its office, in which the business was transacted, the custody of the books and papers, and the funds of the corporation, and had, on more than one occasion, borrowed money, which appeared on the books of the company, entered to the credit of the lender, tends to show the relationship of such person to the corporation, the duty and authority pertaining thereto, and might authorize a jury to infer that, in the absence of authority from the corporation, such acts would not have been permitted.

9. *Corporation; officer of, acting without authority, loss arising from, falls on corporation.*—If corporations, who select their own agents, with whom strangers must deal, hold out a particular officer, or suffer him to hold himself out as having particular or general authority, inviting dealings with him, and a loss must ensue thereby, such corporation must bear it, and not those who, so far as was known, or could be seen by them, dealt with the agent in the line, and within the scope of his duty and employment.

10. *Opinion; what statement by witness not regarded as.*—The opinion of a witness, or a conclusion drawn by him from facts, is not admissible evidence, but a statement by a witness, that he regarded a person "as the general agent" of the defendant corporation, does not fall within this rule, when connected with, and accompanied by statements as to the means and sources of the knowledge of the witness.

11. *Hearsay; statement by witness not.*—A statement by a witness, that "the money was loaned by his agent in 1860, and renewed annually until 1863," is not hearsay, although he subsequently stated that "meantime he was in the State of Texas," for he may have had personal knowledge of the loan and its renewals.

[Talladega Ins. Co. v. Peacock, Adm'r.]

12. *Secretary of corporation; authority to borrow money for corporation; how implied.*—Authority to borrow money for a corporation, by its secretary, may be implied from his relation to the company, the nature of his employment, the mode in which he was permitted to conduct its business, and his borrowing on other occasions; and a charge that he must have had express authority to borrow money. is erroneous, and properly refused.

13. *Charges must be based on the evidence.*—Charges which are not based on, and assert propositions of law about which no question arises on, the evidence in the case, are abstract and misleading, and are properly refused, without reference to whether they are correct or erroneous.

14. *Interest; when commences on contracts to pay money.*—Contracts for the payment of money bear interest from the day it becomes payable.

15. *Same; trivial error as to, will not reverse case.*—A note made April 6, 1863, and due one day after date, bears interest from April 7th, 1863, and a charge asserting that it bore interest from date is erroneous; but where, instead of calling attention to this error by a proper charge, an erroneous charge, "that no interest should be computed," was requested, the error should not avail to reverse the judgment.

APPEAL from Talladega Circuit Court.

Tried before Hon. W. H. SMITH.

This action was brought November 7, 1865, by David McCullough, against the Talladega Insurance Company. The suit was founded on a promissory note, which is set out in full in the opinion of the court. The defendant pleaded, " in short by consent," 1, the general issue ; 2, *non est factum.* The case was tried on these pleas. The plaintiff introduced in evidence the special act incorporating the Talladega Insurance Company (Ac. '855-6, pp. 257–61), and also the charter of the Tuskegee Insurance Company, to which that act refers. The provisions of the charter, so far as they are material in this case, are set out in the opinion of the court. The plaintiff testified that the business of the Talladega Insurance Company was banking, receiving deposits, &c.; that their place of business was in the town of Talladega, Ala.; that (1) J. G. L. Huey was the general agent of the Talladega Insurance Company in 1860, and for some years afterwards; that (2) Huey transacted all business for them in their office, and was the "big man of the nation," (meaning thereby that he was the principal man of the company); that he lent this company a sum of money, in American gold coin, which was, at the time, deposited with them; that (3) James Isbell, as his agent, lent the insurance company this gold, in 1860, at eight per cent. interest, and renewed the loan annually, until 1863, when the insurance company executed the note, which is the foundation of this suit—he having been in the meantime in the State of Texas; that (4) he had often seen Huey in the office of the insurance company, seeming to exercise a general control of their business; that (5) he regarded Huey as the general agent of the company. The plaintiff then offered in evidence the

note sued on, but the defendant objected to its introduction; and the court expressing a wish to hear all the testimony in support of its admission, the plaintiff withdrew the offer to read the note, and introduced as a witness J. B. Huey, a brother of J. G L. Huey, who testified, that (6) J. G. L. Huey was elected secretary of the Talladega Insurance Company, at its organization, and that he was generally known as their secretary; that he frequently assisted his brother in the office, and knew that he had charge of the company's business. Plaintiff then introduced F. M. Thomason, who testified that he had often transacted business with the company, and (7) had lent them money at three different times—at one time $10,000, at another time $10,000, and at still another time $3,500; that he did not know (8) that the insurance company had borrowed money at any other times, except that it had borrowed from some bank in South Carolina; that (9) J. G. L. Huey had general charge of the business of the insurance company; that (10) witness let Huey have the money mentioned above; that (11) he often met members of the board of directors in the office of the insurance company, (12) and had business transactions with them there; and (13) they recognized J. G. L. Huey as secretary, and agent, of the company. A. W. Bowie testified that he was a director in the insurance company, and knew of only two instances in which the company had borrowed money, viz: once from a bank in South Carolina, and once from his father, Alexander Bowie, as administrator of the estate of Davis, and the special authority of the board of directors was first obtained in each of these cases. The other evidence in the cause appears in the opinion of the court. The plaintiff again offered the note, on which the suit was founded, in evidence, and the defendant obejected to its introduction, but the court overruled the objection, and permitted it to be read to the jury; to which the defendant excepted. The defendant offered no evidence, but moved to exclude the portions of the evidence marked above 1, 2, 3, 5, 6, 8, 9, 10, 11, 12, 13, as illegal, and to exclude the clause of the evidence marked 4 as hearsay, and that marked 7 as irrelevant and inadmissible, and also moved to exclude the testimony as a whole.

The court charged the jury, of its own motion, "that if you find for the plaintiff, your verdict must be, 'we, the jury, find for the plaintiff, and assess, as damages, the amount of the note, with interest thereon from date.'" To this charge, the defendant excepted. The plaintiff asked the court to charge the jury: 1. "That the defendant had the right to borrow money, and execute its note therefor, by the hands of

[Talladega Ins. Co. v. Peacock, Adm'r.]

its secretary." 2. "That the words in the defendant's charter, 'and issue its bonds therefor,' confers the power to make notes." These charges the court gave, and the defendant duly excepted. The court also charged the jury, at the request of the plaintiff, that, 1. "It is only necessary for the plaintiff to satisfy you, from the evidence, that Huey was the general agent of the defendant, and was held out to the world as such, to justify you in believing that he had the authority to bind the defendant, as claimed by the plaintiff, although no specific authority to borrow money be proved. 2. That agency is proved as any other ordinary fact, and may be established by inference, or implication, from other facts. 3. Such acts as it may be necessary to show that Huey performed, in order to establish the agency insisted on by plaintiff, need not be acts of borrowing money, but acts performed in the general conduct and management of the business the company was allowed by law to perform, if borrowing money was in the scope of the business of the company. 4. That it was not plaintiff's duty to establish Huey's agency, by any resolution of the company, if he could establish it otherwise. 5. That plaintiff was not bound to look behind the public, and notorious acts of Huey, to ascertain his agency." The defendant excepted to each of these charges, and requested the court to charge the jury: 1. "That the plaintiff must prove that Huey had express authority to borrow the money, and give the note of the company therefor; or that after Huey had given this note, the company, with a full knowledge of all the facts, had ratified the act. This ratification can only be binding on the company, when it is shown that it was made with a knowledge of all the facts. 3. But proof that the company authorized the borrowing of money, once from a bank in South Carolina, and once from Alexander Bowie, as administrator of Davis' estate, is not sufficient to authorize the inference. 4. It was the duty of plaintiff to ascertain the extent of Huey's authority to borrow money for the company, and give the note sued on, before he made the loan, and the law did not permit him to omit doing this." The court gave this charge, with the following oral addition, or qualification, viz: "Unless the jury are satisfied, from the evidence, that, at the time the note was given, Huey was the general agent of the company." 5. That Huey, as secretary of the company, had no authority, by virtue of his office, to borrow money for the company, or in its name, and to pledge its responsibility for the payment of the money, and the note sued on is not binding on the company, unless said Huey, as secretary, was authorized, by a resolution, or by

law, of the directors of the company, to borrow money and make the note; that said note does not bind the company, unless it ratified the act of Huey, with full knowledge of all the facts and circumstances attending the borrowing of the money, and the execution of the note.   6. To authorize the jury to infer the authority of Huey, as secretary, to bind the defendant by the note sued on, by the conduct of the defendant, by the payment of debts, or recognizing liabilities entered into by Huey, as secretary, or made by him in the name of the company, it is necessary that the jury be satisfied, by the evidence, that the payment of such debts, or recognizing such liabilities, so created by said Huey, as secretary, or defendant, was known to the plaintiff, at or previous to the execution of the note sued on, and that said note was taken on the faith of such previous recognition of the acts of said Huey, as the secretary, as binding on the defendant.   7. That under the evidence before the jury, they can not, if they find for the plaintiff, compute interest on the note in suit.   The court refused to give any of these charges, except the fourth, as stated above, and the defendant duly excepted.   The defendant also excepted to the qualification or addition made by the court to the fourth charge.   There was a verdict for the plaintiff for $6,731.41.   The errors assigned are, the rulings on the evidence, and the giving, and refusing to give, the charges as shown above.

PARSONS & PARSONS, and JOHN T. HEFLIN, for appellant. The corporation had power to borrow money and issue its bonds therefor.   The instrument sued on is not a bond, but a promissory note, and the charter gives no authority for its execution.   All officers not specially provided in the charter, were to be created by resolution of the board of directors, and as the secretary is not mentioned in the charter, the directors must, by resolution, have created one, and prescribed his duties.   It was not denied that Huey was the secretary of the company, but appellant insists that he had no authority to bind it by signing said note, or to sign the corporate name to instruments in writing for borrowed money, or to have borrowed the money from appellee.   No express authority to borrow McCullough's money is shown, and it appears that on two occasions the company borrowed money, but that each time it was authorized by a resolution of the directors.   There was no evidence to show that McCullough ever heard, or knew, that the company borrowed the money spoken of by Bowie and Thomason, and he was not, therefore, induced to lend his money, because Huey, acting for the company, had been in the habit of bor-

rowing money. The fact that a person acts as the agent of another, does not prove the agency. That must be proved by other evidence, before it can be assumed that the acts are binding on the principal.—*Scarborough v. Reynolds*, 12 Ala. 252; *McDougald v. Dawson*, 30 Ala. 553. If Huey had any authority to bind the defendant by executing the note, it must be found in the nature of his employment, for the charter gave him no power to do so, and there is no evidence that he was specially authorized to do so by the board of directors.—*Childress v. Miller*, 4 Ala. 447; *Skinner v. Gunn*, 9 Port. 305; *Spyker v. Spence*, 8 Ala. 333. The officers of a corporation are special, and not general agents, and can not bind it, except as authorized by its charter or by-laws. Persons dealing with them, are charged with notice of the extent of their authority.—*Adrian v. Roome*, 52 Barb. (N. Y.) 399; *Chicago R. R. Co. v. James*, 22 Wis. 194; *Blood v. Marcus*, 38 Cal. 409; *Culver v. Leavy*, 19 La. 202. The president (or secretary) of an incorporated company can not borrow money in the name of the company, and pledge its responsibility, unless authorized by the charter of the company to do so, or by a resolution or by-law of the directors.—*L. & F. Ins. Co. v. M. F. Ins. Co.* 7 Wend. 31; *Beach v. Fulton Bank*, 3 Wend. 573; 2 Cow. 432; *Ib.* 673.

One who deals with an agent, is bound, at his peril, to ascertain the extent of his authority.—*Gullett v. Lewis*, 3 Stew. 22; *Fisher v. Campbell*, 9 Port. 210; *VanEpps v. Smith*, 21 Ala. 317; *Powell v. Henry*, 27 Ala. 612; 43 Ala. 719. The court erred in not excluding the note sued on, and in not excluding the evidence.—43 Ala. 719. The plaintiff had no right to interest on the note from its date. It was payable one day after date. McCullough's evidence as to the loan of the money was hearsay, and should have been rejected. 16 Ala. 308; *Pearson et ux. v. Darrington*, 32 Ala. 229; 27 Ala. 458. The evidence that Huey was acting as general agent of the company, was the mere expression of opinion. The witness should have stated what Huey was doing, and have left the inference as to his agency to the jury.—1 Ala. 632; *Hatchett v. Gibson*, 13 Ala. 587; 34 Ala. 69. The other exceptions to the evidence were well taken, and should have been sustained.—3 Ala. 697; 11 Ala. 566; 23 Ala. 49; 30 Ala. 672. The court erred in adding a qualification to a written charge.—Code, § 3109; *Edgar v. State*, 43 Ala. 43. The charge was proper as requested, and should have been given.—11 Ala. 485; *Ib.* 1059; 4 Ala. 116; 50 Ala. 134.

WALDEN & BISHOP, for appellee.

BRICKELL, C. J.—The action was commenced, and the trial, verdict and judgment had, in the life-time of the intestate of the appellee. The cause of action is a promissory note, purporting to be made by the Talladega Insurance Company, payable to the intestate, in form and substance as follows: "$3,673.31. April 6, 1863. One day after date, I promise to pay to the order of David McCullough, in American gold coin, thirty-six hundred and seventy-three dollars, at the office Talladega Insurance Company, for value received. (Signed) Talladega Insurance Company, by James G. L. Huey, Secretary."

Several pleas were filed, but the evidence introduced was directed particularly to the issue formed on a verified plea of *non est factum.* There are numerous exceptions (thirty-four in number) to the admission of evidence, and the instructions given, or refused to be given, the jury. With the exception of one instruction, which we will notice separately, there are but two questions involved. *First,* had the appellant power to borrow money, and for its payment, make a promissory note? *Second,* had Huey, as Secretary, authority to borrow money for the company, and make its note, as security therefor? .

The company was created by a special act of incorporation, approved February 13, 1856; and was entitled "to all the privileges, and invested with all the powers, and subject to all the restrictions, as were conferred and imposed upon the Tuskegee Insurance Company," by the act incorporating that company, approved January 19, 1856.—Pamph. Acts, 1855–6, p. 261. The privileges and powers conferred on the Tuskegee Insurance Company, were the transaction of the business of fire, marine, and life insurance; receiving of moneys on deposit, the collection of promissory notes and bills of exchange, the lending of money, and the purchase, discount, and sale of such notes and bills. Express power to borrow money, and issue the bonds of the corporation therefor, was conferred.—Pamph. Acts, 1855–6, p. 249.

1. The proposition now insisted upon, is, that this is a limitation upon the power of the company, restraining and confining it to the issue of bonds, for the payment of money borrowed, excluding the power to make any other evidence of the debt, such as a bill of exchange, or a negotiable promissory note. When this cause was before this court, at a former term (*McCullough v. Talladega Ins. Co.* 46 Ala. 376), it was held, this proposition could not be maintained; and such in ·effect was the decision in *Talladega Ins. Co. v. Sanders,* 43 Ala. 115. We entertain no doubt these decisions are correct. It can not be matter of doubt, that every corporation

clothed with the powers conferred on this company, has an incidental and implied power to borrow money, and in the exercise of the power, may make paper negotiable, or not negotiable, and give such securities as may be deemed most advantageous. The power, though it may not be expressly conferred, is implied and incidental, unless of it there is express prohibition.—*Ala. Gold Life Ins. Co. v. Central Ag. & Mech. Asso.* 54 Ala. 73; *Allen v. Montgomery R. R. Co.* 11 Ala. 454; *M. & C. R. R. Co. v. Talman*, 15 Ala. 491. The clause of the charter referred to, declaring the company could issue bonds for money borrowed, can not be construed as limiting it to the making of such securities, excluding the implied and incidental power to make other usual securities and evidences of debt. It was doubtless intended from mere abundance of caution, rather as an additional grant of power to issue corporate bonds, which though so styled, and under the corporate seal, it was intended, unlike the bonds of a natural person, should have the qualities, properties, and privileges of negotiable paper.—*Lucas v. Pitney*, 3 Dutch. (N. J.) 227; *Railroad Company v. Howard*, 7 Wall. 412.

2. The powers of the company could be exercised, its business transacted, only through the intervention of officers or agents; either such as are specially designated in its charter, or such as might be appointed by the proper authority, in pursuance of its express, or implied, or incidental powers. The charter provides that the governing body of the company, shall consist of a board of directors, of whom, one must be chosen president. The board is invested with full power in express terms, to appoint and remove at pleasure, all officers and agents of the company, and *to prescribe their duties.* It was doubtless intended that there would be written evidence of the appointment of all officers or agents, and of the duties assigned them, when their relation to the company was continuous, and their employment not casual and temporary. If there was such evidence of Huey's appointment as secretary, and of the duties he was in that capacity to perform, it was within the peculiar knowledge, and exclusive possession of the appellant; and if it would have availed any purpose in this controversy, ought to have been produced. The appellee was not bound to produce it, or account for its absence. And whatever of presumption can be drawn because of its absence, must be visited on the appellant, who has voluntarily assumed the attitude of neglecting or refusing to produce evidence, which was in its power and possession, if it exists.

The appointment of the officers or agents of a corporation, strangers can not be compelled to prove by written evidence.

It may, or not, rest in writing; it may be inferred from the recognition, and continuous acquiescence by the corporation in the acts of such officers or agents.—*Ala. & Tenn. R. R. Co. v. Kidd*, 29 Ala. 221. Whether the note, the foundation of suit, should be introduced and read in evidence, before any evidence was given of Huey's agency, of his official relation to the company, or of his authority, was a matter largely of discretion with the plaintiff. It is but seldom necessary that the court can or ought to prescribe the order in which a party may introduce his evidence. When all the evidence is produced, if it is wholly insufficient to support the plaintiff's cause of action, or the grounds of defense, it is the duty of the court, on motion, to exclude it. Or, if any part of the evidence is then irrelevant, because of the failure to connect it with other evidence, it ought to be excluded, on motion.

The principal issue, as we have already said, was on the plea of *non est factum*. The burden of proof rested on the plaintiff to show, not only that Huey was secretary of the company, but that as such he had authority to borrow money for the company. When evidence was introduced tending to show these facts, the note was admissible, and the evidence, however weak or slight it may have appeared to the court, could not be excluded from the jury. There was no disputation of the fact, that through a period of six or seven years, from the time the company organized, until there was a suspension of active business, Huey was its secretary. The duty and power with which he was clothed, is to be inferred from his acts in that capacity, which were known to, and acquiesced in, by the company. It is true, as a general rule, that agency must be proved otherwise than by the mere acts of the agent, before it can be assumed that such acts are binding on the principal. And it may also be true, that as a general rule, the mere acts of the assumed agent, unaccompanied by any evidence tending to show that the principal had knowledge of, or assented thereto, are not even competent evidence to be submitted to the jury upon the question of agency. But, when there is any evidence tending to show the assent of the principal to the acts of the agent, these acts, in connection with such evidence of the principal's assent thereto, must go to the jury, and if the acts of the supposed agent are of such a nature and so continuous in their character, as to furnish in themselves, any reasonable ground of inference that they were known to the principal, and that in the absence of authority to the agent, he would not have suffered them, the acts are competent evidence to be submitted to the jury.— *Gimon v. Terrell*, 38 Ala. 208; *McDonnell v. Br. Bank Montgomery*, 20 Ala. 313; *Krebs v. O'Grady*, 23 Ala. 716. Within these principles certainly

falls much of the evidence the appellant moved to exclude
from the jury. That Huey openly and notoriously transacted
the general business of the company—that he had possession
and care of the office in which the business was transacted—
the custody of its books and papers, and of its funds, and
that he had, on more than one occasion, borrowed money for
it, and the money was on the books of the company entered
to the credit of the lender, were all facts having a tendency
to show his relationship to the company—the duty and au-
thority pertaining to the relation, and their publicity, noto-
riety, and continuity, were, it may be, sufficient in the judg-
ment of the jury, to fix knowledge of them upon the company,
and to authorize the inference that in the absence of author-
ity for them, they would not have been permitted. It is true,
that whoever deals with an agent, if he intends holding the
principal to liability, must inquire into the extent of the au-
thority of the agent. Corporations select their own officers
and agents; strangers have no voice in this selection, and if
they deal with the corporation must transact business
through its agents. For the acts of its agents, while engaged
in its service and in the line of their authority and duty, a
corporation is liable to the same extent as would be an indi-
vidual under like circumstances. When it holds out a par-
ticular officer, or suffers the officer to hold himself out, as
having particular or general authority, inviting dealings with
him, if loss must ensue, the corporation must bear it, and not
those who have so far as was known, or could be seen by
them, dealt with him in the line and scope of his duty and
employment.—*Mer. Nat. Bank v. State Nat. Bank*, 10 Wall.
604. There is no reason to suppose that Huey, in the origi-
nal borrowing of the money of the plaintiff in 1860, or in the
subsequent renewal of the promissory note for it in 1863, was
guilty of any infidelity to the company. No fact was shown
from which it could be inferred that he appropriated the
money to his own, and not to the use of the company. The
defense was rested wholly on the weakness or insufficiency of
the evidence introduced by the appellant to show Huey's
agency and authority. If, however, there had been evidence
tracing deceit to Huey in the transaction, it would not have
been available, if the evidence satisfied the jury that the com-
pany had, by its mode of transacting business, its recogni-
tion and acquiescence in his acts, held him out to the public
as its chief, or only executive officer, clothed with general
powers to transact its business. When, as was said by Lord
Holt, in *Hun v. Nichols*, 1 Salk. 289: "Seeing somebody
must be a loser by this deceit, it is more reasonable that he

that employs, and puts trust and confidence in the deceiver, should be a loser, than a stranger."

The opinion of a witness, or a conclusion drawn by him from facts, as a general rule, is not admissible evidence. We do not think the statement of the witness that he regarded Huey as the general agent of the company, falls within this rule of exclusion. If it stood alone, disconnected from the evidence given previously and subsequently by the witness, it might be objectionable. When considered in connection with that evidence, it is a statement in a guarded form of the fact that Huey was the general agent of the company, accompanied by a statement of the witness' means and sources of knowledge of the fact.—*McGrew v. Walker*, 17 Ala. 824.

Nor was the statement of the plaintiff, that the money was loaned originally in 1860, through his agent, and renewed annually until 1863, objectionable as hearsay. The only indication that the knowledge of the witness was derived from hearsay, was the subsequent statement that in the meanwhile he had been in Texas. This may have been true, and he may have had direct personal knowledge of the loan, and its renewals. If his knowledge was derived wholly from hearsay, it could easily have been shown by a cross-examination on the point, to which he was not subjected.

In passing upon the admissibility of evidence, we have passed on the several instructions given the jury (with one exception), to which the appellant reserved exceptions. It is not necessary to review them; they are in substantial conformity to the views we have expressed. The first instruction requested was erroneous, if for no other reason, because it asserted that the plaintiff must show Huey had express authority to borrow money for the company. The authority could be implied from his relation to the company, the nature of his employment, the mode in which he was permitted to conduct its business, and his borrowing on other occasions.

There was no question in this case growing out of a ratification by the company of any unauthorized act of Huey's as secretary. For it must be borne in mind that if his authority was defined and declared, the appellant had the means of proving it, but neglected to avail themselves of it. The former acts of borrowing and the acquiescence of the company in them, were introduced for the purpose of showing the extent of his authority, and not that the company had, in any instance, ratified his unauthorized acts. The second and third charges requested, if there had been any question of ratification involved, may, or not, have been correct. In view of the evidence, they were abstract and misleading.

[Floyd v. Clayton, Ex'r.]

There was no error in the addition made by the court to the
fourth instruction requested. The fifth and sixth instruc-
tions were properly refused, according to the views we have
expressed.

3. All contracts for the payment of money, bear interest
from the day the money is payable.—Code of 1876, § 2089.
The court erred in the instruction that interest must be com-
puted from the day of the date of the note, instead of the
succeeding day, when it was payable. The error was inad-
vertent, and would have been cured if the appellant had
called attention to it, and asked an instruction that interest
should be computed from the day the note was payable.
But instead of this, attention was directed from it, by the re-
quest of an erroneous instruction, that no interest could be
computed or allowed. We are not of opinion, under these
circumstances, the error, of itself almost insignificant, should
avail to reverse the judgment.

Affirmed.