| 68 | 229 |
| 105 | 198 |

| 68 | 229 |
| 111 | 421 |

| 68 | 229 |
| 132 | 251 |

| 68 | 229 |
| 138 | 427 |

| 68 | 229 |
| 143 | 673 |

# Taylor v. The Agricultural & Mechanical Association of West Alabama.

*Bill in Equity to cure Defective Execution of Mortgage, and to remove Cloud from the Title.*

1. *Corporation formed under general laws; power to borrow money and mortgage property.*—A corporation incorporated under the general laws of this State, the lawful plans and purposes of which render necessary the acquisition of land and the construction of buildings, has the power to make all usual and proper contracts to enable it to obtain loans of money to be used for these purposes, whether it be by a direct negotiation on its own paper and security, or by borrowing the credit of others and employing it in raising money; and such corporation, having expressly conferred upon it by statute the capacity to acquire, purchase, dispose of, and convey real and personal property, has also the power to execute a mortgage on its property to secure such loans, or to protect and indemnify those whose credit it has borrowed.

2. *Same; execution of mortgage by its agents.*—Where by the constitution of such corporation, the board of directors were empowered to elect an executive committee to be composed of three of their members, "who shall be competent to transact any official business, unless otherwise instructed," and such committee, when appointed, were expressly authorized by the board of directors to negotiate a loan, and generally to transact other business pertaining to the board; but were not inhibited from, or instructed against making a mortgage for the security of the loan, and they negotiated a loan by borrowing and using the credit of other parties, and to secure and indemnify such parties, they executed a mortgage on the corporation's real estate; *held*, that the power to execute the mortgage devolved upon the committee, not by delegation from the directors, or as their agents, but by operation of the constitution, and as agents of the corporation, and was included in the general grant of power to transact any *official business.*

3. *Execution of deed to land by agent; when ineffectual to convey the legal title.*—Although a conveyance of real estate may run in the name of the principal in its body, and in all its clauses, yet if it is executed by an agent in his own name, and not in the name of the principal, whether such principal be a corporation, or a natural person, it is not the deed of the principal, and against him can have no operation *in a court of law.*

4. *Defective execution of deed by agent; when enforced in equity.*—In a court of equity, however, it is well settled, that contracts or conveyances made by an agent having authority, though informally and defectively executed, are binding on, and will be enforced against the principal; and upon this doctrine, a court of equity will impart validity to, and enforce a mortgage defectively executed by an agent having authority to execute it in the name of, and as the act and deed of the principal, whether the defective execution is the result of mere inadvertance, or whether it is founded in ignorance or mistake of law.

5. *Ratification by principal of agent's act.*—It is not essential to a ratification by a principal of the unauthorized or defectively executed act

[Taylor v. The A. & M. Association of West Ala.] .

of an agent, that it should be expressed in words; but it may be implied from the acts and conduct of the principal. Such ratification is implied, whenever the acts and conduct of the principal, he having full knowledge of the facts, is inconsistent with any other supposition, than that of a previous authority, or an intention to abide by the agent's act, though it was unauthorized or defectively executed.

6. *Estoppel in pais; effect of on land in equity.*—In a court of equity, an estoppel resting in parol may bind the legal estate in lands.

7. *Ratification by corporation of act of agent ; when an estoppel.*—A loan having been negotiated for a corporation, and to secure it a mortgage made, but defectively executed, on its property by an agent, an acceptance by the corporation of the benefits of the transaction, by receiving and appropriating to its own uses the money obtained on the loan, constitutes a ratification of the agent's act; and although resting in parol, the ratification, in equity, operates as an estoppel on the corporation from denying the authority of the agent, or the execution of the mortgage.

8. *Estoppel by ratification of agent's act; when binding on judgment creditor of principal.*—A corporation having become estopped by its acts and conduct from denying the execution of a mortgage by an agent, such estoppel is equally binding on a subsequent judgment creditor of the corporation, who, having purchased at sheriff's sale the lands conveyed by the mortgage, seeks to eject a purchaser under a power of sale contained in the mortgage.

9. *Sale under power in mortgage defectively executed ; its effect.*—If a sale of lands under a power contained in a mortgage, which had been so defectively executed as not to pass the legal estate, is ineffectual as a foreclosure of the mortgage, it operates, in equity, at least as an assignment of the mortgage to the purchaser, who thereby acquires a full right as assignee to a decree of foreclosure and sale, or to a decree confirming the ineffectual sale, if the owner of the equity of redemption does not interpose to avoid it.

10. *When purchaser is charged with notice of outstanding equity.*— Whenever a purchaser has such information as would put a prudent man on inquiry, and inquiry would lead to knowledge of an adverse claim, it is his own folly if he does not act on the information and make the inquiry. If he does not pursue the inquiry, he is wanting in good faith, an indispensable element of a purchaser without notice, whom a court of equity protects; and he can claim no protection against an outstanding equity prior in point of time to his purchase, of which he would have been informed, if he had been diligent.

11. *Same.*—An agent of a corporation having negotiated a loan, to secure it made a mortgage on the corporation's real estate, which, while inoperative to convey the legal estate by reason of the agent having executed it in his own name, purported on its face to be the act and deed of the corporation, and recited the negotiation of the loan by it, and for its benefit, and the receipt and use by it of the money obtained on the loan. This mortgage having been recorded, the registration of it was examined by the attorney of a creditor of the corporation, who afterwards commenced suit and recovered judgment against it, and became the purchaser of the lands described in the mortgage at a sale made by the sheriff under an execution issued on his judgment. *Held,* that notice of the mortgage as recorded, and of the recitals therein, was sufficient to excite inquiry, and, as a pursuit of that inquiry would have shown him, that although the mortgage was invalid as a legal conveyance, it was valid and operative in a court of equity, he cannot be protected as a *bona fide* purchaser without notice.

APPEAL from Greene Chancery Court. .

[Taylor v. The A. & M. Association of West Ala.]

Heard before Hon. A. W. DILLARD.

On the 3d June, 1871, the Agricultural and Mechanical Association of West Alabama was organized as a corporation under the general laws of this State, by the adoption of a constitution and election of officers, the incorporators having previously filed their declaration in writing with the judge of probate of Greene county, as required by the statute. The provisions of the constitution, the powers of the officers, the purpose of the corporation, and the plan adopted for carrying that purpose into effect, are sufficiently stated in the opinion.　At the meeting of the stockholders at which the organization was perfected, the board of directors were authorized and instructed to negotiate a loan of not exceeding $5,000.00, sufficient for fitting up the fair grounds of the corporation.　On the same day, at a meeting of the board of directors, they elected or appointed an executive committee under the constitution, who were instructed by resolution duly adopted, " to proceed at once to procure a plan for, and ascertain the probable cost of erecting the necessary buildings on the fair grounds; advertise for proposals for erecting the same ; enter into contracts, and negotiate a loan, not to exceed five thousand dollars, sufficient to defray expenses in connection therewith."　The committee were further instructed " to take charge of the grounds and all property belonging to the association, and take such measures for their protection and security as they may deem expedient. Also to transact other business pertaining to the board."　On 22d August, 1871, after the association had acquired suitable real estate for its fair grounds, the executive committee, in pursuance of the instructions contained in the foregoing resolutions of the board of directors, procured F. M. Kirksey and several others to sign two promissory notes for the accommodation of the association and to enable it to raise the funds, with which to erect the necessary buildings on its fair grounds.　One of these notes was for $1,372.50, and was payable on 1st December, 1872, to the order of R. O. Perrin, " Pres. of A. & M. Aso.," and on his endorsement it was discounted by the treasurer of the association, and the money received and disbursed by him in and about improvements erected on the fair grounds.　The other note was for $1,475.00, and was payable on 1st December, 1873, to J. T. Brown, who, on its delivery, let the association have the money therefor, which was also used by it in and about said buildings.　In compliance with an agreement made with the makers of these notes at the time they were signed, the executive commitee, on the 13th October, 1871, executed and delivered to them a mortgage on the real estate of the asso-

ciation, where its fair grounds were located, securing and in-demnifying them against loss by reason of the execution by them of said notes. This mortgage recites their appoint-ment, and also that they were authorized and empowered by the stockholders of the association at a meeting thereof, to execute a mortgage on said real estate "for the purpose of raising the necessary funds to erect the requisite buildings on the association's grounds," and also recites the execution of said notes and the purpose thereof, and that they were turned over to said association and by it negotiated, and the money raised thereon received and used by it for the purpose above stated. It clearly appears from the body of the mort-gage, that it was intended as the act and deed of the associa-tion; but it was executed by the three members of the ex-ecutive committee, not in the name of the association, nor in their official capacity as committee-men, but as individuals. This mortgage was duly recorded in the office of the judge of probate of Greene county, in which the land was situated. The association having failed to pay the notes, the makers thereof paid them after their maturity, and afterwards, on 15th November, 1875, they sold the land decribed in the mortgage under a power of sale contained therein to the appellant, to whom they conveyed it by deed; and soon after-wards he went into possession under his purchase.

On the 20th April, 1874, George Cleveland recov-ered a judgment in the Circuit Court of Greene county against said corporation for the sum of $184.12, and costs of suit; and on the first Monday in September, 1875, the land described in the mortgage was sold by the sheriff under an execution regularly issued on said judgment, and was pur-chased by George Cleveland, to whom it was conveyed by the sheriff—executions having been regularly issued on the judgment from the date of its rendition to the day of sale. At the sale notice of the mortgage was publicly given by the · mortgagees. Afterwards, Cleveland having died, his execu-tors commenced an action of ejectment against the appellant in the Circuit Court of Greene county to recover the posses-sion of said land.

The bill in this cause was filed on 2d October, 1878, by the appellant against said association, and the ex-ecutors and devisees of George Cleveland, deceased, and W. S. Bird, the surviving member of the executive committee, by whom the mortgage was executed, two of them having died. The foregoing facts are, in substance, averred in the bill, and it is charged therein, that said mortgage, although defectively executed, was intended as the act and deed of the association, and was entitled to a preference over the subse-

quent judgment rendered against the association in favor of Cleveland; and that the deed to Cleveland was a cloud upon the title to the land.  To the bill are made exhibits the declaration of incorporation, and the proceedings of the stockholders in the organization thereof, the proceedings of the stockholders and board of directors authorizing the obtaining of a loan by the corporation, the mortgage executed by the executive committee, and the deed to the appellant by the mortgagees.  The prayer of the bill is, that an injunction be issued restraining and enjoining Cleveland's executors from the further prosecution of their action at law for the recovery of said land; that the deed to Cleveland be declared to be a cloud upon appellant's right and title, and that it be removed, and " that if it shall appear that the said mortgage which was made, or intended to be made by the said A. & M. Association, or by their said executive committee on the 13th of October, 1871, as aforesaid, was imperfectly executed, or defective as a mortgage conveying the legal title to the said land, to order and decree a specific performance, and the execution of a legal mortgage, by which the legal, as well as the equitable title in and to said land shall be secured or vested in your orator.  Or, if it be deemed. necessary, that the said agreement in writing shall be held in equity as a mortgage and a specific lien on the said land, and be enforced in favor of your orator as the purchaser thereof;" and for general relief.

A decree *pro confesso* was taken against the association. Bird answered, substantially admitting the allegations of the bill, and offering to abide by, and perform whatever the court might order and direct in the premises.  The executors of Cleveland also answered the bill; but the defense insisted upon in their answer sufficiently appears from the opinion. In addition to the facts above stated, the evidence also showed, that one of the attorneys of Cleveland, who represented him in the suit against the association, about the time the suit was brought, read on the record the mortgage which was described in, and exhibited to the bill; and that the debt on which the judgment was founded was contracted prior to the execution of the mortgage.

On the hearing, had on pleadings and proof, the chancellor was of the opinion, that the bill was without equity, and caused a decree to be entered dismissing it; and this decree is here assigned as error.

WM. P. WEBB, for appellant.

CLARK & MCQUEEN, and E. MORGAN, *contra*.

[Taylor v. The A. & M. Association of West Ala.]

(No briefs came to the hands of the reporter.)

BRICKELL, C. J.—The "Agricultural and Mechanical Association of West Alabama" is a private corporation, formed on the 8th day of May, 1871, under the general laws of force providing for the formation of corporations. The purpose and object of the corporation, as expressed in the declaration filed in the office of the judge of probate, is *"the promotion of the agricultural and mechanical interests of West Alabama,"* and the same purpose is expressed in the constitution. On the 3d June, 1871, the association was organized by the adoption of a constitution, and the election of officers. The officers consisted of a president, vice-president, secretary, treasurer, and a board of directors, ten of whom were elected by the stockholders, and the president, vice-president, secretary, and treasurer were *ex officio* members of the board. The duties of the several officers were prescribed in the constitution. The eighth section declared: "The president, vice-president, secretary, treasurer and directors shall constitute a board, of whom five shall constitute a quorum for the transaction of all official business." The ninth section reads: "The board of directors shall have power to elect an executive committee, to be composed of three of their number, who shall be competent to transact any official business, unless otherwise instructed." The power of private corporations, by the general law of force when the association was formed and organized, were defined as follows: 1. To have succession by its corporate name, for the period limited in its charter, and when no period is limited, perpetually. 2. To sue and be sued. 3. To use a common seal, and to alter the same at pleasure. 4. To hold, purchase, dispose of, and convey such real and personal estate as is limited by its charter; and if not so limited, such an amount as the business of the corporation requires. 5. To appoint such subordinate officers and agents as the business of the corporation requires, prescribe their duties, and fix their compensation. 6. To make by-laws not inconsistent with any existing law, for the transfer of its stock, the management of its property, or the regulation of its affairs. No private corporation could exercise any other than these powers, except such as were expressly given in its charter, or such as were necessary to the exercise of the powers thus given.—R. C. 1867, §§ 1767-69.

The plan adopted by the association for effecting the purposes of its creation, *"the promotion of the agricultural and mechanical interests of West Alabama,"* was that which is now very usual, the holding of fairs at stated times for the com-

petitive exhibition of the domestic animals of farms or plantations, agricultural products and implements, and specimens of mechanical skill and industry. This rendered necessary the acquisition of land, and the construction of buildings suitable for the exhibitions. The association had the power to make all such contracts as were necessary and proper to enable it to acquire real estate, and to erect the necessary buildings. A usual and proper mode of acquiring lands and defraying the expense of erecting buildings, would be the borrowing of money to be used for these purposes. Having expressly the capacity to acquire, purchase, dispose of, and convey real and personal estate, it had the power to mortgage it as security for debts incurred in its acquisition, or in the erection of buildings, or for money borrowed. This power resides in all private corporations having capacity to acquire and hold property, unless it is withheld by statute. The power was not withheld by the statute, but it was evidently contemplated that the corporation should have the power of a natural person, by any voluntary conveyance to part with its property.— *Gordon v. Preston*, 1 Watts, 385; 1 Jones on Mort. § 102.

These propositions are not denied by the counsel for the appellees, but it is objected, that the debts the mortgage was intended to secure, were not the debts of the association, but the debts of the makers and indorser of the notes, and for their security the association was without power to mortgage its real estate. Though the association may not have been liable to the holders of the notes, yet, as between it and the makers and the indorser, it was primarily liable for their payment. The makers and indorser simply loaned to it their credit; the notes were negotiated for its benefit; the money obtained, received by it, and applied to its own use. The transaction was the one not infrequent of a loan of credit, to enable the borrower to raise money. Into such a transaction the association had capacity to enter; the capacity was involved in the power to borrow money—the power to make all usual and proper contracts to enable it to obtain loans, whether it be by a direct negotiation for a loan on its own paper and security, or by borrowing the credit of others, and employing it in raising money.— *Ala. Gold Life Ins. Co. v. Central A. & M. Ass.*, 54 Ala. 73. Having the power to borrow the credit of the makers and indorser of the notes, it was a legal obligation and duty to protect, secure, and indemnify them against the liability incurred for the accommodation and benefit of the association. The mortgage is consequently a security for a debt and liability resting upon, and binding the association.

It is next objected, that the executive committee had not authority to mortgage the real estate of the association; that the only authority delegated to them by the board of directors was to negotiate a loan, and their authority did not include authority to mortgage or pledge any property of the association. It is an error to regard the executive committee as the agents of the board of directors. They derived their appointment from the board of directors, but they are, as fully as the directors themselves, the officers and agents of the association. Their appointment is provided for in the constitution, and their duty and authority defined and prescribed by it. That duty and authority is "the transaction of any *official business, unless otherwise instructed.*" The same term, *official business,* is employed in defining the authority and power of the board of directors. It is employed in the same sense, and is of the same meaning, when applied to the board of directors, as when applied to the executive committee. It does not in either connection enlarge or narrow in signification. Corporations can only exercise their powers, transact their business, accomplish the purposes of their creation, through the instrumentality of agents or officers. The term, *official business,* as here employed, included the exercise of the general corporate powers, which were not by the constitution committed to some other officers, or reserved to the stockholders in their annual meetings. It does not seem possible to suggest any other definition and meaning of the term.—*Hoyt v. Thompson,* 19 N. Y. 207. Debts of necessity would be created, security for their payment would often be required, and must be given. These transactions would rest in the power of the directors, until the appointment of an executive committee; and when the committee was appointed, the power would devolve on them, save so far as they were *otherwise instructed*—devolve upon them, not by delegation from the directors, nor as their agents; but by operation of the constitution, and as the agents of the association. While the executive committee were expressly authorized by the board of directors to negotiate a loan, and to transact other business which was specified, they were not inhibited from, or instructed against making a mortgage for the security of the loan. On the contrary, after instructing them specially to negotiate a loan, and to perform other duties, in the broadest of terms they were instructed *"to transact other business pertaining to the board."* So far from narrowing by instructions the power they could exercise under the constitution, in the absence of instructions, there is an explicit declaration,

[Taylor v. The A. & M. Association of West Ala.]

that the whole power should remain vested in them, as fully as if there had been no instructions given as to the particular matters. The execution of the mortgage was within the corporate power essential to the consummation of the purposes for which the association was organized, and its execution was included in the general grant of power to the executive committee to transact *official business.*—*Sargent v. Webster,* 13 Metc. 497; *Hoyt v. Thompson,* 19 N. Y. 207.

The next objection is, that though the executive committee may have had power to execute the mortgage, yet the mortgage is inoperative and invalid, because not executed in the name of the association and under its corporate seal. In a court of law this objection would be conclusive; the mortgage would be ineffectual and inoperative as a conveyance of the legal estate in the premises, the effect and operation it has in courts of law. This is conceded by the bill, and the insufficiency of the mortgage is the most important fact, rendering necessary a resort to a court of equity, to cure the insufficiency. The rule is unquestioned, that a conveyance executed by an agent or attorney, to operate in a court of law as a transfer of the right and interest of the principal, must be made in the name of the principal, and must be executed as his deed. There is no rule of law more firmly settled, and supported by greater uniformity of decision, though it may seem narrow and technical, and may often operate the disappointment of the clear and manifest purpose and intention of parties. The rule is as applicable when a corporation, as when a natural person, is the principal. Though the conveyance may, as in the mortgage before us, run in the name of the principal in its body, and in all its clauses, yet, if it is executed by an agent in his own name, and not in the name of the principal, it is not the deed of the principal, and against him can have no operation in a court of law.—1 Am. Lead. Cases (5th Ed.), 727; 1 Jones, Mort. § 130.; *Jones v. Morris,* 61 Ala. 518.

While this rule prevails at law, in equity it is equally well settled, that contracts or conveyances made by an agent having authority, though informally and defectively executed, are binding on, and will be enforced against the principal. Upon this doctrine a court of equity imparts validity to, and enforces a mortgage defectively executed by an agent having authority to execute a mortgage in the name of, and as the act and deed of the principal. It is not material, whether the defective execution is the result of mere inadvertance, or whether it is founded in ignorance or mistake of law. When there is a valuable consideration, and the parties have con-

tracted, having full capacity, equity looks "upon that as done, which ought to have been done." The true meaning of this maxim is," says Judge STORY, "that equity will treat the subject-matter, as to collateral consequences and incidents, in the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been; not as the parties might have executed them." 1 Story Eq. Jur. § 64 *g.* The executive committee had, as we have determined, power not only to negotiate a loan in the name of, and for the use and benefit of the association, binding the association for its payment, but they had also power to mortgage in the name of the association the corporate property as security, or as indemnity to the makers and indorser of the promisory notes, whose credit was borrowed. This power existing, and its exercise having been attempted, the parties are not to be disappointed, and their just rights defeated merely because, from. inadvertance, or from ignorance, or mistake as to the method which ought to be pursued to bind the association, passing its estate and interest in the lands, there is a defective execution of the power. A court of equity, acting upon its just maxims of treating that as done, which ought to have been done, considering agreements founded on a valuable consideration, as performed at the time when they ought to have been performed, in favor of whoever has the right to demand performance, will aid and cure the defective execution.—*Love v. S. N. L. W. & M. Co.* 32 Cal. 639; *M. & C. P. R. R. Co. v. Talman,* 15 Ala. 471; 1 Jones, Mort. § 169.

But independent of these views, it is shown very fully that the association had ratified and approved all the acts of the executive committee in this transaction, not only the mode adopted in borrowing the money, but the execution of the mortgage. We do not mean, that it is shown that there was assent to, and confirmation of the transaction, expressed in words. That is not essential, for ratification is more often implied from the acts and conduct of parties having an election to avoid or to confirm, than found expressed in words. And it is implied, whenever the acts and conduct of the principal, having full knowledge of the facts, is inconsistent with any other supposition than that of a previous authority, or an intention to abide by the act, though it was unauthorized. Here the association accepted all the benefits of the transaction—received and appropriated to its own uses the money obtained on the promissory notes, and has acquiesced in all that was done by the executive committee, not even now objecting that it was unauthorized. A corporation has as full

capacity as a natural person to ratify the unauthorized or the defectively executed acts of its agents, and the ratification is the equivalent of a prior authority.—Ang. & Ames, Cor. § 304; 1 Am. Lead. Cases (5th Ed.), 719. Having received and retained the benefits of this transaction, with *full knowledge* of all the facts, the association has ratified and confirmed it, unless intentional fraud is imputed, for which there is neither room nor reason. It is too late now, as it was when the judgment creditor Cleveland obtained judgment, and when he acquired a mere general lien by the issue of execution, for the association to impugn the transaction. The ratification may rest in parol; it nevertheless operates as an estoppel on the association. In a court of equity, an estoppel resting in parol may bind the legal estate in lands.— *McPherson v. Walters*, 16 Ala. 714; *Walker v. Murphy*, 34 Ala. 591.

The estoppel is as binding on a subsequent judgment creditor as it is on the association. His succession is to the estate, right and interest of the association, bound by its acquiescence in, and ratification of the acts of the executive committee. As the association did not disaffirm these acts, but received and enjoyed all the benefits resulting from them, long before he acquired a lien, there is no equity in his claim to disavow and disaffirm them to the prejudice of other creditors equally meritorious, who, relying upon them, may have lost all opportunity to obtain other security.—*Gordon v. Preston*, 1 Watts, 385.

It is insisted, however, that the sale under the power in the mortgage was irregular, and passed to the appellant no right or estate in the lands; that as the mortgage was valid and operative only in a court of equity, there could be no foreclosure of it otherwise than by a decree of a court of equity; that the legal estate remained in the association, and passed to Cleveland by his purchase at the sale by the sheriff. Assuming all this to be true, the ineffectual sale, in equity, operates as an assignment of the mortgage to the appellant, and he now has a full right as assignee to a decree of foreclosure and sale, or to a decree confirming the ineffectual sale, if the owner of the equity of redemption does not interpose to avoid it.—1 Jones on Mortgages, § 812; 2 *Ib.* 1678–1902.

It is lastly insisted, that Cleveland is a *bona fide* purchaser without notice of the facts which, in equity, render the mortgage valid and operative as the act and deed of the association, and should therefore be protected. But we think notice must be imputed to him. It is an admitted fact that

[Taylor v. The A. & M. Association of West Ala.]

his attorney, about the time the suit at law was commenced, examined the registration of the mortgage. That this examination was made while the relation of attorney and client was existing, and in the course of transacting the business of the client, is justly inferable from the terms of the admission. The mortgage on its face purports to be the act and deed of the association. It recites the making of the promissory notes at the request, and for the accommodation of the association; also their negotiation by the association, the reception of the money thereby obtained, and its use in erecting buildings. Notice of these facts was surely sufficient to excite inquiry, whether the executive committee executing it in their own names had not authority to execute it in the name of the association, or if wanting in original authority, whether there had not been ratification, and consequently, that though the mortgage was invalid as a legal conveyance, it was valid and operative in a court of equity. Whenever a purchaser has such information as would put a prudent man on inquiry, and inquiry would lead to knowledge of an adverse claim, it is his own folly, if he does not act on the information, and make the inquiry. He is wanting in good faith, an indispensable element of a purchaser without notice, whom a court of equity protects, if he does not pursue the inquiry, and can claim no protection against an outstanding equity, prior in point of time to his purchase, of which he would have been informed, if diligent.—2 Lead. Eq. Cases (4th Ed), 144. All that Cleveland acquired by the purchase at the sheriff's sale, in the view of a court of equity, was the equity of redemption of the mortgagor. It is not that he claims, but the legal estate in the premises, to which he is not entitled. Of the ineffectual or irregular sale no complaint is made, and no claim to its vacation is preferred.

The decree of the chancellor is reversed, and a decree is here rendered granting relief to the appellant.